# United States Court of Appeals
**FOR THE DISTRICT OF COLUMBIA CIRCUIT**

Argued March 4, 2016          Decided July 1, 2016

No. 13-5360

AKIACHAK NATIVE COMMUNITY, ET AL.,
APPELLEES

v.

UNITED STATES DEPARTMENT OF THE INTERIOR AND SALLY
JEWELL, SECRETARY OF THE INTERIOR,
APPELLEES

STATE OF ALASKA,
APPELLANT

Appeal from the United States District Court
for the District of Columbia
(No. 1:06-cv-00969)

*J. Anne Nelson*, Assistant Attorney General, Office of the Attorney General for the State of Alaska, argued the cause and filed the briefs for appellant.

*Elizabeth Ann Peterson*, Attorney, U.S. Department of Justice, argued the cause for federal appellees. With her on the brief were *John C. Cruden*, Assistant Attorney General, and *William B. Lazarus*, Attorney.

2

*Heather R. Kendall-Miller* argued the cause for tribal appellees. With her on the brief were *Matthew N. Newman*, *Richard Guest*, *Lloyd Benton Miller*, *Hollis L. Handler*, and *Goriune Dudukgian*.

Before: TATEL, BROWN, and MILLETT, *Circuit Judges*.

Opinion for the Court filed by *Circuit Judge* TATEL.

Dissenting opinion filed by *Circuit Judge* BROWN.

TATEL, *Circuit Judge*: In 1971, after decades of conflict, the United States finally settled land claims staked by descendants of Alaskan aboriginal tribes. The U.S. Department of Interior had long interpreted this settlement to bar it from taking land into trust for Indian tribes in Alaska. In this case, several Alaska Native tribes sued the Department, challenging the regulation implementing that prohibition. After the district court held that Interior's interpretation was contrary to law, the Department, following notice and comment, revised its regulations and dismissed its appeal. The State of Alaska disagrees with both the district court and Interior, and now seeks to prevent any new efforts by the United States to take tribal land in trust within the State's borders. Unfortunately for Alaska, which intervened in the district court as a defendant and brought no independent claim for relief, the controversy between the tribes and the Department is now moot. We therefore dismiss Alaska's appeal for lack of jurisdiction.

**I.**

Like many Alaska Native tribes, the three tribes that initiated this litigation—Akiachak Native Community, Chalkyitsik Village, and Tuluksak Native Community—live in small villages reachable only by air and water. Compl.

¶¶ 24, 30, 41. These tribes, together with the Chilkoot Indian Association (collectively "Akiachak"), sought to persuade the Department of Interior to take certain land into trust—a form of restricted land ownership under which the United States possesses legal title to land for the benefit of Indian tribes. *Id.* ¶¶ 29, 36, 40, 42. They believed that trust status would "ensure [the] protection" of these lands "for future generations of tribal members," *id.* ¶ 40, as well as allow them to "assert undisputed jurisdiction over [these] lands" and obtain federal enforcement of ordinances banning alcohol sales, *id.* ¶ 35.

Akiachak, however, faced a significant barrier to this course of action: the Department of Interior had long maintained that it was legally barred from procuring trust land in Alaska. *See* 25 C.F.R. § 151.1 (1980) (establishing that the Department of Interior's land-into-trust regulations "do not cover the acquisition of land in trust status in the State of Alaska, except acquisitions for" one tribe lacking aboriginal claims). By filing this lawsuit, Akiachak set out to change that.

Some background is necessary to understand the basis for Akiachak's claim to relief. Acquisition of Indian trust lands by the U.S. government has a long history. The Indian Reorganization Act of 1934 (IRA) authorizes the Secretary of the Interior to acquire trust lands, 25 U.S.C. § 465, and designate new Indian reservations, *id.* § 467. The IRA considers Alaska Natives to be Indians for purposes of the Act, *id.* § 479, but originally excluded Alaska, then a territory, from the trust acquisition provision, Indian Reorganization Act of 1934, Pub. L. No. 73-383, § 13, 48 Stat. 984, 986. In 1936, Congress extended the IRA's trust authority to Alaska and authorized the Secretary to designate as reservations land that had been allocated for Indian use under prior statutes and

executive orders, Act of May 1, 1936, Pub. L. No. 74-538, §§ 1, 2, 49 Stat. 1250, resulting in the designation of seven reservations and the acquisition of several other properties in trust, *Akiachak Native Community v. Salazar* (*Akiachak I*), 935 F. Supp. 2d 195, 198 (D.D.C. 2013). Six decades later, in 1994, Congress added an antidiscrimination provision that prohibited the Department of Interior from "classif[ying], enhanc[ing], or diminish[ing] the privileges and immunities available to a federally recognized Indian tribe relative to the privileges and immunities available to other federally recognized tribes." Act of May 31, 1994, Pub. L. No. 103-263, 108 Stat. 707, 709 (codified at 25 U.S.C. § 476(g)).

But these ownership schemes left unresolved many outstanding land claims by Alaska Natives based on aboriginal rights, that is, "possessory rights of Indian tribes to their aboriginal lands . . . extinguishable only by the United States." *Oneida Indian Nation of New York v. Oneida County*, 414 U.S. 661, 667 (1974). After Alaska became a state in 1959, this potential for outstanding aboriginal claims limited the U.S. government's ability to transfer land to the new state under the Alaska Statehood Act. Conflict over the State's land selections prompted Congress to pass the Alaska Native Claims Settlement Act (ANCSA) in 1971. "[D]esigned to settle all land claims by Alaska Natives," ANCSA extinguished aboriginal claims and revoked all designated reservations, except for one: the Annette Island Reserve inhabited by the Metlakatla Indians, who, as immigrants from Canada, had no aboriginal claims to Alaska lands. *Alaska v. Native Village of Venetie Tribal Government*, 522 U.S. 520, 523–24 (1998); Federal Appellees' Br. 8. In exchange, Alaska Natives received approximately 44 million acres of land and $962.5 million, to be distributed through corporations owned by Alaska Native shareholders. *Venetie*, 522 U.S. at 524

(citing 43 U.S.C. §§ 1605, 1607, 1613). Congress declared that the settlement

> should be accomplished rapidly, with certainty, in conformity with the real economic and social needs of Natives, without litigation, with maximum participation by Natives in decisions affecting their rights and property, without establishing any permanent racially defined institutions, rights, privileges, or obligations, without creating a reservation system or lengthy wardship or trusteeship, and without adding to the categories of property and institutions enjoying special tax privileges or to the legislation establishing special relationships between the United States Government and the State of Alaska[.]

43 U.S.C. § 1601(b). Following ANCSA's passage, Congress repealed other statutes governing procurement of land for use by Alaska Natives, including the 1936 amendment authorizing the Secretary to designate reservations in Alaska. Federal Land Policy and Management Act of 1976, Pub. L. No. 94-579, § 704(a), 90 Stat. 2743, 2792. Importantly, however, Congress never repealed the IRA's Alaska trust provision.

In 1978, a tribe's request to take certain land into trust spurred the Department of Interior to determine ANCSA's effect on its authority to acquire trust lands in Alaska. Concluding that "Congress intended permanently to remove from trust status all Native land in Alaska except allotments and the Annette Island Reserve," Memorandum from Thomas W. Fredericks, Associate Solicitor, Indian Affairs, to Assistant Secretary, Indian Affairs 3 (Sept. 15, 1978) ("Fredericks Opinion"), Interior published regulations

governing acquisition of Indian trust land that excluded "the acquisition of land in trust status in the State of Alaska," a provision known as the "Alaska exception." 25 C.F.R. § 151.1 (1980). It was this Alaska exception that stood in Akiachak's way.

Akiachak filed the complaint in this case against the Secretary and the Department of Interior, seeking declaratory relief in the form of an order ruling that the Alaska exception violated the IRA's antidiscrimination provision, the Constitution, and the Administrative Procedure Act. Compl. ¶¶ 54, 56, 58; *id.* Prayer for Relief ¶¶ I–III. Akiachak also sought an injunction directing Interior "to implement the acquisition of land into trust procedures without regard to the bar against Alaska tribes" and "to accept and consider Plaintiffs' requests to have lands in Alaska taken into trust." *Id.* Prayer for Relief ¶¶ IV–V.

The State of Alaska, seeking to defend the Alaska exception's validity, intervened in the district court as a defendant. The State filed an answer in which it presented several affirmative defenses, including that Akiachak's claims were "barred by the Alaska Native Claims Settlement Act." State of Alaska's Answer, Affirmative Defenses ¶ 3. The State's answer also included a prayer for relief in which it requested "entry of a judgment . . . declaring [the Alaska exception] compliant with [the IRA's antidiscrimination provision]," "denying plaintiffs' requested injunctive relief," and "declaring [the Alaska exception] consistent with and compelled by the Alaska Native Claims Settlement Act." *Id.* Prayer for Relief ¶¶ 1, 4, 6. Alaska's answer included no purported crossclaim against Interior or counterclaim against Akiachak, nor did the State file any separate crossclaim or counterclaim.

In response to cross motions for summary judgment, the district court agreed with Akiachak that the Alaska exception violated the IRA and granted summary judgment in its favor. *Akiachak I*, 935 F. Supp. 2d at 210–11. The court observed that the 1936 amendments to the IRA had expressly granted the Secretary authority to take land into trust in Alaska. *Id.* at 203. Akiachak argued—and Interior agreed—that such authority had survived ANCSA, while Alaska argued that ANCSA had "implicitly repealed the Secretary's statutory authority to take Alaska land into trust outside of Metlakatla." *Id.* at 203–04. Following thorough consideration of Alaska's arguments, the district court concluded that "[f]rom the weight of the textual and structural evidence, and the strength of the presumption against implicit repeals, . . . ANCSA left intact the Secretary's authority to take land into trust throughout Alaska." *Id.* at 208. The court then ruled that because the Alaska exception prevented the Secretary from considering trust petitions from non-Metlakatlan Alaska Natives, it violated the IRA's antidiscrimination provision. *Id.* at 210–11.

The district court then ordered the parties to brief the question of the appropriate remedy. Abandoning its claim to injunctive relief, Akiachak urged the court to remand to the Secretary for "curative rulemaking." *Akiachak Native Community v. Jewell* (*Akiachak II*), 995 F. Supp. 2d 1, 6 (D.D.C. 2013). Instead, the district court severed and vacated the portion of 25 C.F.R. § 151.1 that constituted the Alaska exception. *Id.* Vacatur was appropriate, the court concluded, because "the deficiencies of the Alaska exception [were] fatal; the Secretary could not promulgate it again on remand." *Id.* Subsequently, the district court granted Alaska's motion to enjoin Interior from taking any land into trust pending appeal. *Akiachak Native Community v. Jewell* (*Akiachak III*), 995 F. Supp. 2d 7, 18–19 (D.D.C. 2014).

Although Interior initially appealed the district court's judgment, it eventually decided to revise its regulations and drop its appeal. Specifically, it issued a proposed rule eliminating the Alaska exception, and sought comment on that course of action. 79 Fed. Reg. 24,648, 24,649 (May 1, 2014). Alaska filed comments in opposition and also filed a motion in the district court to enjoin the rulemaking. The district court denied the motion, noting that Alaska had never "argue[d] that the Proposed Rule or the rulemaking process itself [would] cause it irreparable harm," and explaining that such processes could cause no such harm "[b]ecause the rulemaking process marks such a preliminary step, and one with limited consequences," given that the court "ha[d] already severed the Alaska exception to the land into trust regulations." *Akiachak III*, 995 F. Supp. 2d at 15. Following the comment period, Interior then finalized the rule and removed the Alaska exception from its land-into-trust regulations. 79 Fed. Reg. 76,888 (Dec. 23, 2014). Noting that "[a] number of recent developments . . . caused the Department to look carefully at this issue again," "including a pending lawsuit" and "urgent policy recommendations" from two blue-ribbon commissions, Interior "carefully reexamined the legal basis for the Secretary's discretionary authority to take land into trust in Alaska" and concluded that "ANCSA left . . . the Secretary's . . . land-into-trust authority in Alaska intact." *Id.* at 76,889–90. According to Interior, "[t]he district court's judgment in [*Akiachak I*] is consistent with the conclusion we reach but is not the basis for the Department's decision to eliminate the Alaska Exception." *Id.* at 76,891. Alaska has not challenged the new regulation.

After Interior issued the proposed rule suggesting the elimination of the Alaska exception, the Department voluntarily dismissed its appeal. It then filed a motion to dismiss Alaska's appeal for lack of standing. Mot. to Dismiss

Intervenor State of Alaska's Appeal 2 (July 18, 2014). After the new rule became final, Interior filed a separate motion seeking to dismiss Alaska's appeal as moot, arguing that "[t]he district court's judgment has now been overtaken by Interior's administrative action to delete the regulatory language challenged in the complaint." Federal Appellees' Mot. to Dismiss Appeal as Moot 2 (Oct. 8, 2015). Akiachak joined both motions. We thus have before us Alaska's opposition to these motions and its argument on the merits, i.e., that ANCSA "precludes the creation of new trust land in Alaska." Appellant's Br. 32.

## II.

"To qualify as a case fit for federal-court adjudication [under Article III, section 2], 'an actual controversy must be extant at all stages of review, not merely at the time the complaint is filed.'" *Arizonans for Official English v. Arizona*, 520 U.S. 43, 67 (1997) (quoting *Preiser v. Newkirk*, 422 U.S. 395, 401 (1975)). A case is moot "'when the issues presented are no longer "live" or the parties lack a legally cognizable interest in the outcome.'" *U.S. Parole Commission v. Geraghty*, 445 U.S. 388, 396 (1980) (quoting *Powell v. McCormack*, 395 U.S. 486, 496 (1969)). These requirements ensure that federal courts exercise jurisdiction only over "questions presented in an adversary context and in a form historically viewed as capable of resolution through the judicial process." *Flast v. Cohen*, 392 U.S. 83, 95 (1968).

In order to remain "live," and thus justiciable, a case or controversy must retain at least one "claim for relief [that] remains viable, whether that claim was the primary or secondary relief originally sought." *Ramer v. Saxbe*, 522 F.2d 695, 704 (D.C. Cir. 1975); *see also Powell*, 395 U.S. at 499 ("reject[ing] respondents' theory that the mootness of a 'primary' claim requires a conclusion that all 'secondary'

claims are moot"). The causes of action identified in the complaint perform the Article III function of restricting the court's review to "a real and substantial controversy admitting of specific relief through a decree of a conclusive character, as distinguished from an opinion advising what the law would be upon a hypothetical state of facts." *Aetna Life Insurance Co. of Hartford v. Haworth*, 300 U.S. 227, 241, 244 (1937).

As described above, Akiachak requested two forms of relief in the district court: a declaratory judgment that the Alaska exception violated the Constitution, the IRA, and the APA; and an injunction directing Interior to apply its land-into-trust regulations to Alaska. Each cause of action challenged the validity of the Alaska exception. *See* Compl. ¶¶ 53–58. Because that regulation no longer exists, we can do nothing to affect Akiachak's rights relative to it, thus making this case classically moot for lack of a live controversy. *See, e.g.*, *Burke v. Barnes*, 479 U.S. 361, 363 (1987) ("[A]ny issues concerning whether [a bill] became a law were mooted when that bill expired by its own terms."); *Diffenderfer v. Central Baptist Church of Miami, Florida, Inc.*, 404 U.S. 412, 414–15 (1972) (per curiam) ("The only relief sought in the complaint was a declaratory judgment that the now repealed [statute] is unconstitutional as applied to a church parking lot used for commercial purposes and an injunction against its application to said lot. This relief is, of course, inappropriate now that the statute has been repealed."). A similar situation arose in *Larsen v. U.S. Navy*, 525 F.3d 1, 4 (D.C. Cir. 2008), where we explained that "because the [agency has] already eliminated the [challenged] [p]olicy and plaintiffs never allege that the [agency] will reinstitute it, any injunction or order declaring it illegal would accomplish nothing— amounting to exactly the type of advisory opinion Article III prohibits." Although the voluntary repeal of a regulation does not moot a case if there is reason to believe the agency will

reinstitute it, "the mere power to reenact a challenged [rule] is not a sufficient basis on which a court can conclude that a reasonable expectation of recurrence exists" absent "evidence indicating that the challenged [rule] likely will be reenacted." *National Black Police Ass'n v. District of Columbia*, 108 F.3d 346, 349 (D.C. Cir. 1997). No such evidence exists here.

Alaska argues that this case remains live because we could, it says, provide it with two forms of effective relief: a declaration that ANCSA prohibits Interior from acquiring trust land in Alaska and an injunction prohibiting the agency from doing so. According to Alaska, it "pleaded for affirmative relief" in the district court when it sought a ruling that the Alaska exception was valid. Appellant's Reply Br. 3; *see* State of Alaska's Answer, Prayer for Relief ¶¶ 1–3, 6 (requesting an "entry of judgment . . . declaring 25 C.F.R. Part 151 compliant with [the IRA's antidiscrimination provision]," "constitutional," and "consistent with and compelled by the Alaska Native Claims Settlement Act").

Alaska's argument ignores the restrictions that Article III's case or controversy requirement places on the jurisdiction of the federal courts. As our decision in *National Football League Players Ass'n v. Pro Football, Inc.*, 56 F.3d 1525 (D.C. Cir. 1995), *vacated in part on other grounds*, 79 F.3d 1215 (D.C. Cir. 1996), makes clear, the scope of a federal court's jurisdiction to resolve a case or controversy is defined by the affirmative claims to relief sought in the complaint or, as may be the case, in any counterclaims or crossclaims. There, to determine whether the case had become moot, we looked only to the "relief requested by" the National Football League Players Association in a dispute over payment of union dues. *Id.* at 1529. Concluding that "the only relief for which the appellants prayed and which the District Court could have granted—suspension of [certain football]

players for the remainder of the 1993–94 season—became impossible to grant" when the season ended, we held that the case had become moot because "the matter in dispute before the arbitrator, failure to pay fees for the 1993–94 season, could not be affected by the District Court by virtue of the limited relief sought by appellant." *Id.* Although the Association argued that "the declaratory relief granted by the District Court" would "have continuing effect on the relationship between the Players Association and the [team] and its players (and any similarly situated teams)," and thus that we could grant effective relief "by rescinding the declaratory order," we explained that the narrow scope of relief requested in the district court meant that, as a legal matter, that court's declaratory order affected only the 1993–94 season, which had already ended. *Id.*; *see also Alton & Southern Railway Co. v. International Ass'n of Machinists & Aerospace Workers*, 463 F.2d 872, 879–80 (D.C. Cir. 1972) (To prevent mootness, "there must be at least a capacity for a declaration of a legal right concerning a future projection of the actual dispute that precipitated the litigation.").

The Supreme Court made the same point in *Powell v. McCormack*, noting that "the constitutional requirement of a case or controversy" is "suppl[ied]" by "the . . . issues presented" to the court, and that a case will remain justiciable only so long as at least one of those issues remains live. 395 U.S. at 497. And in *Diffenderfer v. Central Baptist Church of Miami, Florida, Inc.*, the Court concluded that a constitutional challenge to a repealed statute providing a tax exemption for church property was moot because no court could grant "[t]he only relief sought in the complaint," namely, a declaratory judgment that the statute was unconstitutional and an injunction barring its application to the property in question. 404 U.S. at 414–15; *see also Love v. Griffith*, 266 U.S. 32, 34 (1924) (holding that a constitutional challenge to a rule

prohibiting African Americans from voting in a past primary election was moot because "[t]he bill was for an injunction that could not be granted at that time," and "[t]here was no constitutional obligation to extend the remedy beyond what was prayed"); *Mills v. Green*, 159 U.S. 651, 658 (1895) (finding a case moot where the plaintiff sought to participate in a constitutional convention that had already occurred, which made it "obvious . . . that[] even if the bill could properly be held to present a case within the jurisdiction of the circuit court, no relief within the scope of the bill could now be granted").

As noted above, Alaska intervened in the district court as a defendant and filed an answer that contained affirmative defenses and a prayer for relief, but nothing identified as a counterclaim or crossclaim. Alaska nonetheless insists that it "pleaded for affirmative relief" when it "assert[ed] . . . an affirmative defense that some or all of the Tribes' claims are barred by ANCSA and request[ed] declaratory relief." Appellant's Reply Br. 3 & n.5. Under Federal Rule of Civil Procedure 8(c), however, affirmative defenses made "[i]n respon[se] to a pleading" are not themselves claims for relief. True, Rule 8(c)(2) provides a potential mechanism for extending jurisdiction to an improperly pled claim: "[i]f a party mistakenly designates a defense as a counterclaim, or a counterclaim as a defense, the court must, if justice requires, treat the pleading as though it were correctly designated." But several of our sister circuits have held that a request for relief that amounts to no more than denial of the plaintiff's demand is properly considered an answer, not a separate claim for affirmative relief that expands the court's jurisdiction. *See Riverside Memorial Mausoleum, Inc. v. UMET Trust*, 581 F.2d 62, 68 (3d Cir. 1978) ("A counterclaim may entitle the defendant in the original action to some amount of affirmative relief; a defense merely precludes or diminishes the plaintiff's

recovery.”); *Kleid v. Ruthbell Coal Co.*, 131 F.2d 372, 373 (2d Cir. 1942) (holding that a bankruptcy trustee’s objection to a creditor’s claim was an affirmative defense rather than a counterclaim because it was “a purely defensive pleading interposed against allowance of the claim” that allowed for no damages judgment in favor of the trustee and could not survive once the creditor’s claim was withdrawn); *cf. National Surety Corp. v. Charles Carter & Co., Inc.*, 539 F.2d 450, 457 (5th Cir. 1976) (noting that, even if a contractor had not styled its claim for damages as a counterclaim, “the court could have considered the claim of offset in the original answer as a counterclaim” because the contractor “was entitled to judgment” of damages). These decisions suggest that Alaska presented only a defense, as in order to resolve Akiachak’s claim that the exception ran afoul of the IRA, the district court necessarily had to grapple with Alaska’s contrary argument that “the Alaska Native Claims Settlement Act . . . implicitly repealed the Secretary’s authority to take most Alaska land into trust” and thus compelled the regulation. *Akiachak II*, 995 F. Supp. 2d at 3. But even were we to construe Alaska’s pleading as asserting some independent claim, the only relief Alaska requested was a ruling that the Alaska exception was valid and compelled by the statute. State of Alaska’s Answer, Prayer for Relief ¶¶ 1–3, 6. As with Akiachak’s complaint, the subject of that purported claim—the Alaska exception—no longer exists, and so cannot continue to generate a live controversy.

Although Alaska never identifies the precise basis for its alleged independent claim to relief, the dissent takes matters into its own hands and contends that “Alaska affirmatively sought relief of its own by requesting ‘entry of a judgment . . . declaring [the Alaska exception] consistent with *and compelled by* the Alaska Native Claims Settlement Act.’” Dissenting Op. at 2 (alterations in original) (quoting State of

Alaska's Answer, Prayer for Relief ¶ 6). "[F]rom the outset," the dissent writes, "Alaska made clear its interests were unique and the Department could not be expected to adequately defend them." *Id.* The dissent asserts that the phrase "compelled by" must have constituted an independent claim for relief because Interior's argument that the Alaska exception was within its discretion "would have been sufficient to win the suit," and thus Alaska must have been seeking "relief . . . that was separate and distinct from merely winning the suit." *Id.* at 2–3. "Alaska still has something to litigate even when the exception is no longer in force," the dissent believes, "because Alaska seeks a declaration that the exception must be the law." *Id.* at 8.

The dissent's position suffers from several flaws. First, it conflates Rule 24(a)'s standard for intervention as of right, which requires merely that "the applicant show[] that representation of his interest may be inadequate," a "minimal" "burden," *Trbovich v. United Mine Workers of America*, 404 U.S. 528, 538 n.10 (1972) (internal quotation marks omitted), with the presentation of an affirmative claim for relief. True, Alaska and Interior presented alternative defenses to Akiachak's claims, but that demonstrates only that Alaska satisfied Rule 24(a), not that it asserted a claim against Interior. *See Fund for Animals, Inc. v. Norton*, 322 F.3d 728, 736 (D.C. Cir. 2003) (noting that "interests need not be wholly adverse before there is a basis for concluding [under Rule 24(a)] that existing representation of a different interest may be inadequate" (internal quotation marks omitted)). Interior and Alaska each offered statutory interpretations that, if correct, would have resulted in nothing more than denial of the relief Akiachak sought, albeit for different reasons. Thus, both responses were defenses. The dissent insists that Alaska did something distinct from satisfying Rule 24(a) when it "asserted a different affirmative position than what the

Department advanced." Dissenting Op. at 6. But this court has squarely held that Rule 24(a) is designed to allow intervention on the ground that the intervening party seeks to make a legal argument not pursued by a named party—just what happened here. *Dimond v. District of Columbia*, 792 F.2d 179, 193 (D.C. Cir. 1986) (holding that an insurance company could intervene as a defendant under Rule 24(a) in part because the government could not be expected "to make the same legal arguments that [the company] would make"); *see also Building & Construction Trades Department, AFL-CIO v. Reich*, 40 F.3d 1275, 1282 (D.C. Cir. 1994) (holding that an employer's motion to intervene as a defendant was properly denied under Rule 24(a) when the employer "offered no argument not also pressed by" the government).

Second, the dissent would have us read some unspecified claim to relief into the phrase "compelled by" in Alaska's answer. *See* Dissenting Op. at 2. But these words cannot bear the weight the dissent places upon them. For one thing, it is difficult to discern what Alaska's cause of action would have been at the time it filed the answer which, according to the dissent, pled an affirmative claim to relief against Interior. It could not have been the APA, as in its opposition to Akiachak's motion for summary judgment, Alaska argued that no "action by the Secretary associated with the land into trust rule has been arbitrary, capricious, or an abuse of discretion," State of Alaska's Opp'n to Pl.'s Cross-Mot. for Summ. J. Re ANCSA and Reply in Supp. of Alaska's Mot. for Summ. J. ("Alaska Summ. J. Opp'n"), Dkt. No. 85, at 39–40 (Jan. 8, 2009), and urged the district court to conclude that "the record demonstrates that the Secretary has acted appropriately in maintaining the regulatory prohibition against taking land into trust in Alaska," *id.* at 2.

Nor had Interior taken any final action that was contrary to Alaska's interpretation of ANCSA. Indeed, as far as Alaska knew when it filed its answer, Interior still believed that ANCSA prohibited the Secretary from taking any Alaska land into trust. Interior's answer—the only document the Department had filed at that time—contained no assertion that the Alaska exception was discretionary. *See* Answer of the United States to Pls.' Compl., Dkt. No. 17 (Nov. 27, 2007). The dissent believes that because Interior "had publicly rescinded the Fredericks Opinion," "Alaska knew the Department no longer defended the Alaska exception as being compelled by ANCSA." Dissenting Op. at 7. But throughout the proceedings in the district court, Alaska argued that "[s]ince the enactment of ANCSA in 1971, the Secretary's formal position consistently and admittedly has been that ANCSA precludes him from taking land into trust in Alaska." State of Alaska's Resp. to Defs.' Supplemental Br. Pursuant to Court's Order ("Alaska Supplemental Br."), Dkt. No. 103, at 6–7 (Aug. 15, 2012). Alaska expressly acknowledged the withdrawal of the Fredericks Opinion, but accorded it little weight. *See* Alaska Summ. J. Opp'n 42–45 (arguing that although Interior had withdrawn the Fredericks Opinion, the withdrawal memorandum and another prior Solicitor opinion "indicat[ed] that the Solicitor himself understood that the Secretary's discretion to take land into trust in Alaska may be curbed by law"). As Alaska recognized in its district court briefs—and as the dissent itself acknowledges, *see* Dissenting Op. at 14—the State's disagreement with Interior regarding the legal effect of ANCSA developed during the litigation of Akiachak's claim. *See* Alaska Supplemental Br. 4 ("The Secretary first adopted the position that ANCSA permitted him to take land into trust in Alaska during this litigation."). It is therefore difficult to comprehend how, at the time Alaska filed its answer, it could have intended that disagreement to

serve as the basis for an affirmative claim for relief against Interior.

The dissent's theory requires such speculation in part because Alaska never asked the district court to construe anything in its answer as an affirmative claim under Rule 8(c)(2), nor did it do anything to suggest that it intended to bring any such claim. In fact, quite the opposite. As noted above, Alaska's answer was solely responsive: the State neither presented a crossclaim nor pled facts even suggesting that Interior had acted impermissibly or bore some statutory duty to promulgate regulations enforcing Alaska's reading of ANCSA. *See Rundgren v. Washington Mutual Bank, FA*, 760 F.3d 1056, 1061 (9th Cir. 2014) ("A 'claim' is a cause of action or the aggregate of facts that gives rise to a right to payment or an equitable remedy." (citing Black's Law Dictionary 281–82 (9th ed. 2009))). And in its motion to intervene, Alaska argued only that "certain affirmative defenses apply to the state that cannot be advanced by the federal defendants." Alaska's Mem. of Points and Authorities in Supp. of Its Mot. to Intervene, Dkt. No. 18, at 3 (Nov. 27, 2007). Far from asserting its own claim, Alaska expressly recognized that "[a]t the heart of *plaintiffs' case* lies the question of whether [ANCSA] continues to justify the regulatory bar prohibiting the Department of Interior . . . from applying the land into trust regulations in Alaska." Alaska's Reply Mem. in Supp. of Its Mot. to Intervene, Dkt. No. 24, at 1 (Dec. 17, 2007) (emphasis added). Critically, at the very end of the proceedings in the district court, Alaska described the case this way in its motion for reconsideration:

> In this case, Plaintiffs have challenged only the regulatory bar that prohibits Alaska tribes from petitioning the Secretary under 25 C.F.R. Part 151 to have land taken into trust. The parties have briefed

> the legal issues pertaining to that prohibition, and the Court has found it invalid. No other provision of the regulation has been challenged, and no issues other than its legality have been briefed for the Court's consideration.

Mem. in Supp. of State of Alaska's Mot. for Recons., Dkt. No. 112, at 11–12 (Apr. 17, 2013) (footnote omitted). In its briefing here, moreover, Alaska neither cites Rule 8(c)(2) nor refers to anything it did in the district court as raising a "claim." The State argues only that it "assert[ed] . . . an affirmative defense" and "requested" and "pleaded for affirmative relief." Appellant's Reply Br. 3 & n.5. If Alaska knew all along it was asserting a claim, one would have thought it would have used that term in its briefs.

Equally telling, no one in the district court—not even the court itself—seemed to think otherwise. Interior filed neither a pleading in response to the claim the dissent finds apparent on the face of Alaska's answer, nor any response to Alaska's summary judgment motion. Alaska filed no motion for default on any claim, which would have been the proper course of action once Interior failed to respond. Meanwhile, Akiachak filed and briefed a motion for summary judgment against Alaska regarding ANCSA's meaning. *See* Dkt. Nos. 83, 88. And contrary to the dissent's belief that it was "apparent to the district court" that Alaska had brought an affirmative claim to relief, Dissenting Op. at 3, the district court never even hinted that it was rendering judgment, or needed to render judgment, on any affirmative claim raised by Alaska. For instance, in its order requesting supplemental briefing, the district court referred to the "plaintiffs['] . . . challenge [to] the regulations governing the acquisition of land by the United States in trust status for individual Indians and tribes,"

but mentioned no other claim. Dkt. No. 99, at 1 (Apr. 30, 2012).

We engage in this lengthy response to the dissent to demonstrate the difficulty of drawing any conclusion other than that, until filing its reply brief in this court, Alaska seems to have thought it was merely defending against Akiachak's claims. The dissent provides no reason not to take Alaska at its word. *See National Union Fire Insurance Co. of Pittsburgh, Pa. v. City Savings, F.S.B.*, 28 F.3d 376, 393 (3d Cir. 1994) ("[I]t is clear that a defense or affirmative defense is not properly called an 'action' or a 'claim' but is rather a *response* to an action or a claim. When a lawyer files a responsive pleading to an action or claim, she does not say that she is bringing an action or filing a claim; instead, she says that she is answering, responding to, or defending against an action."). Moreover, even under the dissent's theory, we could take Alaska's failure to raise before the district court any suggestion that the court had misconstrued its pleading as the final nail in the coffin of any claim Alaska now purports to have pled. *See 389 Orange Street Partners v. Arnold*, 179 F.3d 656, 664 (9th Cir. 1999) (declining to construe a labeled crossclaim as an affirmative defense under Rule 8(c)(2) because appellant never presented the argument "until oral argument on this appeal," and "if [his] attorneys did not discover this argument until now, the district court should not be expected to have done so for them").

The dissent also relies on the fact that once the case reached this court our Clerk's Office designated Alaska as "appellant" and Interior and Akiachak as "appellees." *See* Dissenting Op. at 4. But a careful look at the procedural history of this case belies any support for the dissent's insistence that "Alaska all along has raised a claim against which the Department has thought necessary to defend." *Id.* at

5. Alaska and Interior each filed separate notices of appeal, on November 29, 2013, and December 3, 2013, respectively. This court consolidated the cases on December 20, 2013. Under the Clerk's Office's routine docketing procedures, any party involved in the original litigation other than the party filing the notice of appeal is automatically designated as an appellee in that appeal without any analysis of the parties' legal adversity, even if one of those parties has filed a separate notice of appeal. When Interior voluntarily dismissed its appeal, it left only Alaska's originally filed appeal and the docket entries accompanying that appeal, which had automatically identified Interior as an appellee. These docketing procedures are therefore irrelevant. To the extent the dissent relies on Alaska's intent to establish Interior as an adverse party, Alaska informed the court in its certificate as to the parties, rulings, and related cases, filed after consolidation, that "Appellants are the State of Alaska (case 13-5360) and the . . . Department of Interior[] and . . . [the] Secretary of the Interior (case 13-5361)." Certificate as to the Parties, Rulings and Related Cases by the State of Alaska 1 (Jan. 21, 2014). Alaska listed only Akiachak and the other tribal litigants as "Appellees." *Id.*; *see also* Statement of Issues by Appellant State of Alaska 1 (Jan. 21, 2014) (captioning Alaska and Interior both as appellants). As noted above, it was not until after Alaska filed its answer in the district court that the State and Interior made different arguments regarding ANCSA's effect. Even so, it is unsurprising that, even once those differing positions became clear, Alaska made no suggestion that it had become legally adverse to Interior; after all, at that time, both parties continued to defend the regulation's legality, a circumstance that changed only midway through this appeal. In any event, that Alaska and Interior eventually became adverse to one another says nothing about whether Alaska presented a crossclaim against Interior in its original answer.

This brings us, then, to Alaska's argument that its appeal remains live because Interior's rulemaking cannot alter the meaning of ANCSA and thus "the new regulation cannot displace the central legal question in this appeal: whether ANCSA prohibits the creation of new trust land in Alaska," an issue over which "[t]here is still a present, live controversy." Appellant's Reply Br. 4 (internal quotation marks omitted). Essentially, Alaska argues that by ruling on the meaning of the statute and vacating the Department's rule, the district court effectively eliminated the Department's power to take any action that could moot the case. Alaska relies on our decision in *Williams v. Washington Metropolitan Area Transit Commission*, 415 F.2d 922, 940 (D.C. Cir. 1968) (en banc), in which we invalidated a rate order but declined to remand to the agency to allow for promulgation of a new order because the Commission "possesse[d] no authority to fix" rates retroactively. But Alaska cannot expand our jurisdiction by relying on *Williams*. That decision never addressed mootness, and Alaska points to no case law distinguishing between remand and vacatur of agency rules for mootness purposes. Indeed, in an analogous situation, the Tenth Circuit in *Wyoming v. USDA*, 414 F.3d 1207, 1212 (10th Cir. 2005), found that rescission of a permanently enjoined regulation mooted a lawsuit challenging the regulation because "[t]he portions of the [regulation] that were substantively challenged by [the plaintiff] no longer exist." As explained above, the same is true here.

Although acknowledging that *Wyoming* "would be analogous to the present circumstances if . . . the only claim to be appealed was what Akiachak stated in the original complaint," the dissent nonetheless believes that because the district court vacated the Alaska exception, Interior's "subsequent curative rulemaking was an absurdity" that "created no legal effect." Dissenting Op. at 9. Thus, the

dissent asserts, "what the court really means is that *the district court* mooted this case when it vacated the Alaska exception," a decision it characterizes as "nonsensical." *Id.* at 10. But Interior did far more than merely acquiesce in the district court's judgment. Instead, it engaged in a new rulemaking, in which it considered the history of trust ownership in Alaska, its prior legal interpretations of the governing statutes, policy issues such as public safety in Alaska Native communities, comments from Native communities and corporations, and the recommendations of blue-ribbon commissions formed to "investigate criminal justice systems in Indian Country" and "evaluate the existing management and administration of the trust administration system." 79 Fed. Reg. at 76,889–92. Interior then exercised its discretion to promulgate a new rule that removed the Alaska exception, explaining that the new rule could "foster economic development, enhance the ability of Alaska Native tribes to provide services to their members, and give additional tools to Alaska Native communities to address serious issues, such as child welfare, public health and safety, poverty, and shortages of adequate housing, on a local level." *Id.* at 76,892. Significantly, Interior made clear that "[t]he district court's judgment . . . is not the basis for the Department's decision to eliminate the Alaska Exception" and that it had "independently concluded that there is no legal impediment to taking land into trust in Alaska, and there are sound policy reasons for giving Alaska tribes the opportunity to petition to take land into trust." *Id.* at 76,891. As in *Wyoming*, it was this action by Interior, not the district court's decision to vacate the regulation—a decision that was, of course, on appeal—that mooted this case.

In sum, once the Department of Interior rescinded the Alaska exception, this case became moot. Even assuming, as Alaska argues, that the district court's interpretation of ANCSA injured the State, such injury cannot extend our

jurisdiction by creating a new controversy on appeal. In essence, Alaska urges us to "entertain the appeal so as to advise the parties of what their rights would be in what is essentially a new legal controversy"—whether Interior's 2014 rule correctly interprets ANCSA. *Alton & Southern Railway Co.*, 463 F.2d at 879. We are without jurisdiction to provide such an advisory opinion. Assuming Alaska's claim is ripe, we see no barrier to the State raising it directly under the APA, *see, e.g.*, *Harris v. FAA*, 353 F.3d 1006, 1009 (D.C. Cir. 2004) (noting the six-year statute of limitations on APA claims), or if and when Interior attempts to take any land into trust in Alaska, *see, e.g.*, *NLRB Union v. Federal Labor Relations Authority*, 834 F.2d 191, 195 (D.C. Cir. 1987) (noting that a party against whom a regulation is applied could challenge that regulation as a "defense in an enforcement proceeding" or other "further agency action applying it" (internal quotation marks and alteration omitted)).

What the dissent thinks is a "catastrophic result" flows from our application of a perfectly uncontroversial and well-settled principle of law, namely, when an agency has rescinded and replaced a challenged regulation, litigation over the legality of the original regulation becomes moot. *See, e.g.*, *Initiative & Referendum Institute v. U.S. Postal Service*, 685 F.3d 1066, 1074 (D.C. Cir. 2012) (finding a challenge to a Postal Service regulation moot where the agency had "beat [the appellants] to the punch by amending the regulation to exempt" the challenged activity); *Coalition of Airline Pilots Ass'ns v. FAA*, 370 F.3d 1184, 1190 (D.C. Cir. 2004) (finding a due process challenge to a regulation moot where the agency had abandoned the regulation and "committ[ed] . . . to provide . . . greater procedural rights"); *National Mining Ass'n v. U.S. Department of Interior*, 251 F.3d 1007, 1010–11 (D.C. Cir. 2001) (declaring a challenge to a revised rule moot,

noting that "[t]he old set of rules, which are the subject of this lawsuit, cannot be evaluated as if nothing has changed" because "[a] new system is now in place" and "[a]ny opinion regarding the former rules would be merely advisory"); *Arizona Public Service Co. v. EPA*, 211 F.3d 1280, 1295–96 (D.C. Cir. 2000) (holding moot a challenge to an EPA rule after the agency issued a "clarification" altering the regulation); *Freeport-McMoRan Oil & Gas Co. v. FERC*, 962 F.2d 45, 46 (D.C. Cir. 1992) (finding a case "plainly moot" where the challenged agency order had been "superseded by a subsequent order," and noting that such an occurrence was so routine that "[o]rdinarily, we would handle such a matter in an unpublished order"). In all such cases, moreover, if the agency promulgates a new regulation contrary to one party's legal position, that party may "cure[] its mootness problem by simply starting over again," Dissenting Op. at 11—by challenging the regulation currently in force. *See, e.g.*, *Freeport-McMoRan Oil & Gas Co.*, 962 F.2d at 46 (noting that a petitioner's opposition to a superseded order was "appropriately resolved either upon review of [the new] order . . . or in [a] complaint proceeding"); *Gulf Oil Corp. v. Simon*, 502 F.2d 1154, 1156 (Temp. Em. Ct. App. 1974) ("This suit sought equitable relief from particular regulations and proceeded to judgment on that controversy. If new considerations provide a basis for challenging the validity of significantly different superseding regulations that now are in effect, that can appropriately be done in a new suit. Otherwise, an unending series of post-judgment controversies about new subject matter could be litigated under the umbrella of a suit already fully considered and decided."). Although the dissent seems to disapprove of agencies' ability to moot challenges to regulations, *see* Dissenting Op. at 12, such authority is in fact so fundamental to judicial economy that it serves as the animating principle underlying the administrative exhaustion doctrine: "The basic purpose of the

exhaustion doctrine is to allow an administrative agency to perform functions within its special competence—to make a factual record, to apply its expertise, and to correct its own errors so as to moot judicial controversies." *Parisi v. Davidson*, 405 U.S. 34, 37 (1972). Indeed, this court has criticized an agency for failing to formally remove certain superseded orders from its books because doing so would "sav[e] time, energy, and money, allow[] the parties to focus their attention on review of the [new] order, and allow[] the court to focus on live cases and controversies instead of this moot one." *Freeport-McMoRan Oil & Gas Co.,* 962 F.2d at 47. We went so far as to note that we issued an opinion on the issue specifically "to express our displeasure with [agency] counsel's failure to take easy and obvious steps to avoid needless litigation." *Id.*

The dissent makes several other points that require little response. First, it contends that "in attacking the rulemaking directly, Alaska will be forced to confront a standard of review highly deferential to the Department,"—that is, *Chevron* deference—allowing Interior to "run the table." Dissenting Op. at 10. This argument is difficult to fathom, as, according to the dissent, Alaska would find itself in precisely the same position in a new suit as it was here: bringing an affirmative claim to relief that Interior was "compelled" to promulgate regulations enshrining one particular interpretation of ANCSA. More important, the dissent never explains why *Chevron* would apply to one case but not the other. *See* Federal Appellees' Br. 24 (arguing that *Chevron* applies to Interior's interpretation of ANCSA). Next, the dissent asserts that once this appeal ends, "the Department will be free to take Alaskan lands into trust." Dissenting Op. at 12. It is true that when the district court lifts its stay, the Department could move to take land into trust in Alaska, but it is hardly "free" to do so. Quite to the contrary, Interior will

have to comply with its land-into-trust regulations, which establish a multi-step process requiring the Department to consider, among other things, jurisdictional conflicts and the effect of any acquisition on state and local governments, 25 C.F.R. § 151.11(a); engage in notice and comment on any proposed acquisition, *id.* § 151.11(d); and issue a written decision, *id.* § 151.12—a decision subject to judicial review, *see Match-E-Be-Nash-She-Wish Band of Pottawatomi Indians v. Patchak*, 132 S. Ct. 2199, 2204–10 (2012) (holding that sovereign immunity did not bar review of a trust decision and noting that challenges to such actions on the ground that "the Secretary's decision to take land into trust violates a federal statute" are reviewable under the APA). Finally, according to the dissent, "[t]he issues presented" in this case "are of great significance" to the parties. Dissenting Op. at 13. Undoubtedly so. But no matter how important an issue, courts may not decide cases over which they have no Article III jurisdiction.

## III.

This brings us, finally, to the question of whether we should vacate the district court's decision. All parties urge us to do so, and we agree. The Supreme Court has instructed courts to "dispose[] of moot cases in the manner 'most consonant to justice . . . in view of the nature and character of the conditions which have caused the case to become moot.'" *U.S. Bancorp Mortgage Co. v. Bonner Mall Partnership*, 513 U.S. 18, 24 (1994) (alteration in original) (quoting *United States v. Hamburg-Amerikanische Packetfahrt-Actien Gesellschaft*, 239 U.S. 466, 477–78 (1916)). Because Alaska is "the party seeking relief from the judgment below," *id.*, and has been prevented from appealing the district court's decision for reasons outside its control, vacatur is appropriate to "clear[] the path for future relitigation of the issues . . . and eliminate[] a judgment, review of which was prevented

through happenstance." *United States v. Munsingwear, Inc.*, 340 U.S. 36, 40 (1950).

*So ordered.*

BROWN, *Circuit Judge*, dissenting: The question this court ought to address is whether the Alaska Native Claims Settlement Act (ANCSA) prohibits the Secretary of the Interior from placing land into trust in Alaska. The plaintiffs, several Native American tribes, argued it did not; the State of Alaska, as intervenor, argued it did. The district court agreed with the plaintiffs. But instead of resolving this critical question, the court dismisses this case as moot on the view that the Secretary's repeal of a regulation the district court had already vacated earns a do-over under a deferential standard of review. While I acknowledge the power of this court to declare when a case is dead, the court today euthanizes a live dispute. Respectfully, I dissent.

When Akiachak initiated this suit in the district court, the tribe sought relief in the form of a declaration that the Alaska exception was invalid. Compl. Prayer for Relief ¶¶ I-III. Akiachak proffered three legal rationales for invalidity: that the Alaska exception violated 25 U.S.C. §476(f) and (g), or the Due Process and Equal Protection Clauses of the U.S. Constitution, or the Administrative Procedure Act, 5 U.S.C. §706(2)(a). *Id.* Akiachak further requested an injunction requiring the Department to implement land into trust procedures "without regard to the bar against Alaska tribes" that was then contained in the Alaska exception. All of Akiachak's arguments thus centered on one thing: the invalidity of the Alaska exception. Akiachak could obtain the relief it sought in this suit so long as the district court adopted at least one of its arguments for the Alaska exception's invalidity.

In response, the Department defended the Alaska exception, arguing that the exception did not violate 25 U.S.C. §476(f) and (g), the Constitution, or the APA. The Department took the position that although the Secretary of Interior possessed "both the authority and the discretion to

take lands within the State of Alaska into trust, the Secretary is not legally obligated to do so." Dkt. 55-1 (Cross-motion for Sum. J.) at 25. Rather, in the Department's view, the Alaska exception was a duly promulgated regulation consistent with the demands of federal law. The Secretary could change the regulation, but need not. This argument represented a complete defense against Akiachak's claims; if the Department prevailed, the Alaska exception would remain in place unless and until the Department lifted it pursuant to the APA.

The State of Alaska intervened in the district court to join the Department in opposing Akiachak's suit. But from the outset, Alaska made clear its interests were unique and the Department could not be expected to adequately defend them. In its motion to intervene, Alaska explained that it sought to make an argument the Department had been unwilling to make: that the Alaska exception was not discretionary at all, but compelled by ANCSA. Dkt. 18-2 (Motion to Intervene) at 15. The Department had formerly taken this view in a 1978 Associate Solicitor opinion known as the Fredericks Opinion. The Department withdrew the Fredericks Opinion in 2001, however, and was no longer willing to defend it. Id. at 15.

In seeking to intervene on the basis of its ANCSA theory, Alaska did something more than merely defend against the claim Akiachak had made: Alaska affirmatively sought relief of its own by requesting "entry of a judgment … declaring [the Alaska exception] consistent with and compelled by the Alaska Native Claims Settlement Act." State of Alaska's Answer, Prayer for Relief ¶ 6 [JA 57-58] (emphasis added). This prayer for relief went a step beyond simply affirmatively defending against the claim Akiachak had made. It instead sought relief for Alaska that was separate and distinct from merely winning the suit. After all, the Department's

arguments would have been sufficient to win the suit had they been successful: so long as the Alaska exception was permissible, as the Department argued, Akiachak's claim would fail. Alaska, however, was not satisfied with merely permitting the Alaska exception. Alaska instead claimed that a statute otherwise not at issue in this case—ANCSA— requires the Alaska exception. That argument was a new claim in this suit.

The district court rejected Alaska's claim and its motion for summary judgment because it concluded that ANCSA did not compel the Alaska exception. Dkt. 109 (Opinion) at 19-20. That is the decision Alaska appeals today, and as to that distinct question, this case is not moot.

Rather, Alaska's interest in its ANCSA claim is every bit as live today as it was the day Alaska intervened in the case. Here, the State asked the district court to hold that ANCSA compelled the Alaska exception. The district court disagreed and vacated that regulation, which Alaska believes the law compels. Alaska still wants—and can still obtain—the relief it has sought all along, a declaration that ANCSA compels the Alaska exception. Alaska thus has a "legally cognizable interest in the outcome" of this litigation. *U.S. Parole Comm'n v. Geraghty*, 445 U.S. 388, 396 (1980).

That this outcome left Alaska with a live dispute and an appeal as of right was apparent to the district court, which entertained and granted in part Alaska's motion to stay the decision pending appeal. Specifically, the district court enjoined the Department from taking any Alaska lands into trust while this appeal was pending because such an action would cause "irreparable harm to state sovereignty and state management of land" in Alaska." Dkt. 145 (Opinion Granting Stay) at 12. In doing so, the district court

contemplated that the Department would act as it in fact did and repeal the Alaska exception.  The district court noted "it is entirely possible that the [Bureau of Indian Affairs] publishes a final rule before the D.C. Circuit issues an opinion in this case, and that the Secretary will then begin the process of taking land into trust before a decision is issued on appeal." *Id*.  To avoid the irreparable harm that would result from that outcome, the district court granted Alaska a stay pending appeal by enjoining the Department from taking Alaska lands into trust until this court issued its opinion.  That injunction is the only thing that has prevented the Department from taking Alaskan lands into trust during the pendency of this suit.

Similarly, it seems this state of affairs was apparent to the parties throughout this appeal.  This case has been captioned with the Department listed as "appellees" and Alaska listed as "appellants" despite the fact that both the Department and Alaska were defendants below.  While the origins of those labels arose in this Court according to the routine docketing procedures of our Clerk's Office, any party could have moved for realignment if the party designations were incorrect.  *See Weaver v. United Mine Workers of America*, 492 F.2d 580, 586-87 (D.C. Cir. 1973) (granting a party's motion to withdraw an appeal, remand to district court, and realign the parties).   That Alaska and the Department accepted their adverse alignment suggests they understood themselves to have adverse claims in this case.  After all, if Alaska had no claim of its own at stake in this suit, there would be no reason for the Department to show up in this court and defend against Alaska's appeal; Alaska would have only been an adverse party to the Native Alaskan appellees, and the Department's acquiescence in the judgment would not have changed that reality.  But Alaska does have a separate disagreement with the Department, which drew the Department into this court to defend itself.  Although the

Department primarily asserts a procedural argument aimed at kicking this suit on mootness grounds, the Department nonetheless defends against Alaska's claim on the merits because, indeed, Alaska all along has raised a claim against which the Department has thought necessary to defend. It does not matter, as the Court suggests, that Alaska described both itself and the Department as appellants in its January 21, 2014 certification; at that time, the Department's appeal was still pending and both parties *were* appealing. Nonetheless, after the Department dismissed its appeal in June of 2014, both it and Alaska were content to maintain the Department's status as an appellee. I do not mean to place too much stock in case captioning decisions, nor need I, because the Department itself told this court that "Alaska intervened to assert that the Secretary lacked authority to acquire lands in trust status in Alaska," and the district court "denied relief on its claim." Federal Appellees' Statement of Issues Filed (Jan. 27, 2014).

Today, the court says Alaska sought no affirmative relief in the district court, but I cannot agree. Alaska did seek affirmative relief by requesting a declaration that ANCSA compelled the Alaska exception. That relief is not merely the flip side of Akiachak's claim. In fact, it was entirely possible that both Akiachak and Alaska could lose on their claims, leaving the Department's defense as the prevailing legal theory. Under that outcome, the district court would have held that the IRA did not prohibit the Alaska exception, but neither did ANCSA compel it; the Department would have had the discretion to retain or repeal the Alaska exception. But by entering the case and raising the claim that ANCSA *compelled* the Alaska exception, Alaska raised a new affirmative argument and a new claim for injunctive relief. The district court determined that issue solely because Alaska raised it. Absent Alaska's participation in the case, the

district court would have had no reason to consider whether an injunction enforcing the Alaska exception would have been warranted.

Contrary to the court's view, this position does not "conflate[ ] Rule 24(a)'s standard for intervention as of right … with the presentation of an affirmative claim for relief." Maj. Op. at 15. The point is not that the Department "may" not have adequately defended Alaska's interests, which is what this court's interpretation of Rule 24(a) required for Alaska to intervene as of right in the case. *Trbovich v. United Mine Workers of America*, 404 U.S. 528, 538 n. 10, 92 S. Ct. 630, 636 (1972) (citations omitted). The point is that Alaska *went further than that* and asserted a different affirmative position than what the Department advanced. As Alaska stated in its motion to intervene, "[h]ere, the positions of Alaska and the federal defendants are not the same." Dkt. 18-2 at 15. While the "Department of Interior withdrew the 1978 Fredericks Opinion stating that ANCSA prohibits the Secretary from taking land into trust in Alaska … Alaska supports the reasoning of the Fredericks Opinion and maintains that … Indian country [susceptible to trust status] does not exist in Alaska." *Id*. Thus, "[w]ithout intervention, the full ventilation of these issues cannot take place." *Id*. Alaska made clear not only that it possessed certain interests that the Department "may" not adequately defend ("the State's interest … in ensuring the consistent and uniform application of state law" and "protecting its territorial jurisdiction throughout the state"), but also that it intended to assert an entire argument the Department had abandoned.

The court doubts that Alaska's new argument rose to the level of a "claim to relief" because it says the words "compelled by" are insufficient to establish a claim. Maj. Op. at 16. But the court misconstrues Alaska's claim. Alaska

established an affirmative claim to relief by seeking "entry of a judgment … declaring [the Alaska exception] consistent with and compelled by the Alaska Native Claims Settlement Act." State of Alaska's Answer, Prayer for Relief ¶ 6 [JA 57-58] (emphasis added). Alaska's claim sought a *declaratory judgment* holding that the Alaska exception was not merely "consistent with" ANCSA (as the Department argued) but *compelled by* ANCSA. If ANCSA clearly compels the Alaska exception—as Alaska believes it does—the district court could have declared that fact in its judgment, thus affording Alaska the affirmative relief it sought. The court suggests that only the Administrative Procedure Act could have supplied a basis for any affirmative claim Alaska might have pled, but even if that is true, the Department was free to challenge Alaska's claim for relief on the merits. In fact, the Department did exactly that, arguing that ANCSA left to the Secretary's discretion whether to take land into trust for Alaskan tribes.

Nor does it matter that the Department's view of the case had not been fully fleshed out in court filings at the time Alaska filed its answer. *See* Maj. Op. at 16. Alaska knew the Department no longer defended the Alaska exception as being compelled by ANCSA because the Department had publicly rescinded the Fredericks Opinion (which espoused that view), stating that "there is substantial doubt about the validity of the conclusion reached in" that opinion. Appellant's App. 265. In any event, the Department's answer to Akiachak's complaint raised no claim that the Alaska exception was compelled by ANCSA, so Alaska was free to raise that affirmative claim itself.

To reach its conclusion, the court relies on a series of purportedly analagous cases that are actually inapposite. The court looks to Akiachak's claim—seeking the invalidation of

the Alaska exception—and declares the case moot because the challenged regulation no longer exists. Maj. Op. at 10. But the relevant claim here is not Akiachak's but Alaska's. Alaska's claim is still live because Alaska's claim has always been that the Alaska exception must remain law. Alaska still has something to litigate even when the exception is no longer in force because Alaska seeks a declaration that the exception must be the law. For this reason, the court's reliance on *Diffenderfer*, *Larsen*, and *National Black Police Ass'n* is misplaced. Maj. Op. at 10-11. In those cases, a party sought to invalidate a law, policy, or regulation that no longer existed and that was unlikely to be reenacted. Alaska's relief is still possible where the relief sought in *Diffenderfer*, *Larsen*, and *National Black Police Ass'n* was not.

The court relies on *National Football League* because of the same misunderstanding. Maj. Op. at 11. There, an intervening event (the conclusion of the 1993-94 professional football season) made all of the relief sought in the complaint unobtainable, and therefore, the case was moot. The same would be true here if the relief sought in Akiachak's complaint were the only relief sought in this case. But Alaska's counterclaim raised a new issue, which no intervening event has rendered moot. Mootness has been prevented here because there is "at least a capacity for a declaration of a legal right concerning a future projection of the actual dispute that precipitated the litigation." Maj. Op. at 12, (quoting *Alton & S. Ry. Co. v. Int'l Ass'n of Machinists & Aerospace Workers*, 463 F.2d 872, 879-80 (D.C. Cir. 1972)). That holds true because the "dispute that precipitated the litigation" in the present context is the dispute Alaska alleged when it intervened below.

At the risk of excessive repetition, the same error plagues the court's reliance on *Wyoming v. USDA*, 414 F.3d 1207

(10th Cir. 2005). Maj. Op. at 22-23. There again, the case became moot because "[t]he portions of the [regulation] that were substantively challenged by [the plaintiff] no longer existed." *Id*. at 1212. That situation would be analogous to the present circumstances if Akiachak were the party seeking to appeal or if the only claim to be appealed was what Akiachak stated in the original complaint. But Alaska raised a separate claim here, and that claim is the subject matter of this appeal. Moreover, Alaska's claim survives the Department's regulatory repeal because Alaska seeks a declaration that the regulation is required by law. That relief is still possible despite the repeal, unlike the relief sought in *Wyoming*.

From here, the errors compound because the court rests its opinion on the premise that the Department mooted Alaska's claim when it repealed the Alaska exception. But that action did not— indeed, could not—have caused such a catastrophic result. There are two problems with the court's approach. First, it treats the Department's repeal of a vacated regulation as a meaningful event. In fact, the repeal was meaningless because the district court had already severed and vacated the Alaska exception. Dkt. 130, (Remedy Opinion) at 3-9. The district court took that approach because it was clear to it that "the deficiencies of the Alaska exception [we]re fatal" such that "the Secretary could not promulgate it again on remand." *Akiachak Native Comm. v. Jewell*, 995 F. Supp. 2d 1, at 6 (D.D.C. 2013). Accordingly, the district court rejected the possibility of remanding for a curative rulemaking and instead "sever[ed] and vacate[d]" the Alaska exception from the rest of 25 C.F.R. § 151.1. *See id*. at 7. The Department's subsequent curative rulemaking was an absurdity at best; it created no legal effect because the Alaska exception was already vacated and therefore unenforceable. At worst, the Department's curative rulemaking effected a

strategic bait-and-switch on Alaska, allowing the Department (with this court's authorization) to force Alaska back to district court to start its claim again, but with a deferential standard of review applied to the new rulemaking under *Chevron*. Either way, when the court relies today on the absence of the Alaska exception to demonstrate the mootness of this case, what the court really means is that *the district court* mooted this case when it vacated the Alaska exception. That is nonsensical, of course, because the decision of the district court to vacate the Alaska exception is the very decision Alaska is challenging here and from which Alaska is entitled to an appeal as of right.

Second, it is odd to think (as the court must) that the Department could moot Alaska's claim by doing precisely what Alaska has sought to prevent from the moment it intervened in this suit. Alaska has tried all along to prevent the repeal of the Alaska exception; it hardly moots Alaska's case to have the Department formalistically (if meaninglessly) do exactly what Alaska feared.

In treating the Department's repeal of the Alaska exception as a meaningful decision that has mooted this case, the court falls prey to the Administration's thimblerig. Of course, it was in the Department's best interest to retract the vacated Alaska exception in a rulemaking and thus force, if it could, Alaska to attack that rulemaking rather than merely to appeal a decision of a district court. Why? Because in attacking the rulemaking directly, Alaska will be forced to confront a standard of review highly deferential to the Department. The Department will run the table.

That the mootness problem the Department urges is illusory becomes even clearer when the court suggests Alaska could bring this case and avoid a mootness problem by simply

returning to the district court and raising the same claim against the same party in a new case. Maj. Op. at 25. On its face, that recommendation is confirmation that the case is not moot but has only hit a procedural roadblock thrown up the Department and endorsed by this court. In no other case on which the court relies could the supposedly aggrieved party have cured its mootness problem by simply starting over again. When an intervening event truly moots a case, no promised "do-over" can save it.

Following this case, Alaska will have two options: either challenge the new rule afresh in district court or wait for the Department to take lands into trust and then challenge that administrative decision directly. Both of these approaches disadvantage Alaska compared to the present litigation. If Alaska awaits the administrative decision, it will not only face a deferential standard of review favoring the Department but also the general reluctance of courts to disturb administrative actions retroactively. *But see U.S. v. Mead Corp.*, 533 U.S. 218, 226–27 (2001) (*Chevron* deference only applies where Congress has delegated authority to an agency); *cf*. Final Appellant's Br. 47. This is especially true if the Department chooses to take land into trust, which will introduce the reliance interest of tribal parties into any balancing that a future court may undertake. It is enough to say that Alaska will never be in the same posture it is today.

In any event, the result the court suggests is contrary to judicial economy and basic fairness. Alaska did the right thing by intervening here, in a case in which the subject matter being contested related substantially to the State's interests. Alaska sought to promote judicial economy by locating itself with other interested parties in the same court and as part of the same proceedings, adding its related claim to the others already being litigated. Today this court undoes

that sensible effort, only to recommend that the gathered parties disband and start the same dispute over again in district court. It is as if the groom is at the altar, the bride is in the vestibule, and friends and family gathered in the pews, but the court has decided to reschedule the wedding for a few days from now in a different church down the road. The litigants, a state and a federal agency, are taxpayer-supported entities. The result is waste—pure and simple.

To make matters worse, the court's suggestion that the parties begin afresh in district court carries real consequences for Alaska, consequences that threaten the State with "irreparable harm" according to the district court. Dkt. 145 (Opinion Granting Stay) at 12. Currently, the Department is operating under a stay that prevents taking Alaskan land into trust. That stay protects Alaska while this appeal is pending, but upon issuance of the court's decision today, that stay will be lifted and the Department will be free to take Alaskan lands into trust. Alaska can hope, of course, that another district court will see fit to enjoin the Department from doing so while Alaska starts over. But having obtained a stay once does not guarantee extraordinary relief will be granted again. *See*, *e.g.*, *Winter v. Natural Resources Defense Council, Inc.*, 555 U.S. 7, 24 (2008) ("A preliminary injunction is an extraordinary remedy never awarded as of right."). By making the Department's rulemaking the pivotal fact in its mootness determination, the court has arguably decided the merits *sub silentio*. And that decision necessarily affects another court's calculus in deciding whether injunctive relief is appropriate.

The court says Alaska's argument amounts to saying "the district court effectively eliminated the agency's power to take any action that could moot the case." Maj. Op. at 21. Embedded in that statement is the assumption the government

can always choose to end a case when it wishes, for all parties. But in intervening, Alaska established that it had interests at stake in this case that were different from those of the Department. Nothing says the Department, in addition to being able to effectively "settle" with Akiachak by acquiescing to the tribe's claims, should also be able to acquiesce on behalf of Alaska, dissipating Alaska's distinct interests in the case. Indeed, Alaska's concern is not about the agency's power to moot the case; it is about the agency's power, period. The purpose of the case or controversy requirement is to reserve our adversarial judicial process for disputes between real adversaries. Today the court endorses the opposite approach, suggesting the government always retains the power to moot a case, even when its actions exacerbate rather than alleviate the grievance of another party. We have adversaries before us today seeking to have a live controversy resolved. This case is not moot, and I would hear it.

We should not deceive ourselves about the disservice we do the parties in not resolving this case on the merits. The issues presented are of great significance. The district court's decision and the Department's actions may very well affect Alaska's sovereignty—infringing its jurisdictional hegemony and its territorial integrity. At the very least, the potential establishment of Indian Country in Alaska arguably runs counter to the bargain the State struck with the federal government (and paid for handsomely) when ANCSA was enacted. *See* Donald Craig Mitchell, Alaska v. Native Village of Venetie: Statutory Construction or Judicial Usurpation? Why History Counts, 14 Alaska L. Rev. 353 (1997). After all, the Department's present view of ANCSA is a recent invention; at the origination of this very suit the Department held a view contrary to what it espouses now. The issues of statutory interpretation at play here can hardly be of obvious

advantage to the Department given that it took the administration well over thirty years to see things this way, and it is not clear Congress delegated any interpretive authority to the Secretary. *See* 43 U.S.C. §§ 1601, 1603, 1618(a). ANCSA has been recognized as a significant legislative accomplishment, bringing disparate interest groups together—the State of Alaska, Native peoples, the federal government—to create a new system for land recognition that explicitly repudiated and replaced the paternalistic reservation model implemented in the lower continental states. *See Alaska v. Native Village of Venetie Tribal Gov't*, 522 U.S. 520, 523−24 (1998). The Department's new view of ANCSA runs counter to that historical narrative, and the express intentions of Congress. *See* Address by Hon. Ted Stevens, United States Senator, before a Joint Session of the First Session of the Twentieth Alaska State Legislature (Apr. 2, 1997) in Senate & House J. Supp. No. 9 (1997). Whether the Department's view is accurate is a question deserving serious consideration. I, for one, would have considered that question today.