251 F.3d 1007 (D.C. Cir. 2001)
 National Mining Association, Appellant
v.
United States Department of the Interior, et al., Appellees
 No. 96-5274
 United States Court of Appeals FOR THE DISTRICT OF COLUMBIA CIRCUIT
 Argued November 6, 2000
Decided June 8, 2001
 
 Appeal from the United States District Court for the District of Columbia (94cv02740)Thomas C. Means argued the cause for appellant. With him on the briefs were Harold P. Quinn, Jr., J. Michael Klise and Kirsten L. Nathanson. John A. MacLeod entered an appearance.
 Kathryn E. Kovacs, Attorney, U.S. Department of Justice, argued the cause for appellees. With her on the brief were James F. Simon, Acting Assistant Attorney General, and Robert H. Oakley, Attorney. John T. Stahr and William B. Lazarus, Attorneys, entered appearances.
 Before: Ginsburg, Randolph, and Rogers, Circuit Judges.
 Opinion for the Court filed by Circuit Judge Randolph.
 Randolph, Circuit Judge:
 
 
 1
 No one may engage in surface coal mining without a permit issued pursuant to the Surface Mining Reclamation and Control Act, 30 U.S.C. 1201 et seq., and the regulations thereunder. Under the Act, States administer permit programs approved by the Secretary of the Interior as consistent with federal laws and regulations. See National Mining Ass'n v. United States Dep't of the Interior, 70 F.3d 1345, 1347 (D.C. Cir. 1995). The questions initially presented in this appeal dealt with the validity of several federal regulatory requirements imposed on permit applicants, and the procedures for contesting the accuracy of information used to determine permit eligibility. After oral argument, the Interior Department revised many of these regulations, and so we are faced with additional questions concerning the extent to which the case is now moot.
 
 
 2
 Some of the original regulations stemmed from a consent decree requiring the Interior Department to "establish and maintain a computerized system" to track applicants and violators, in order to enforce 30 U.S.C. 1260(c). See Save Our Cumberland Mountains v. Clark, No. 81-2134, 1985 U.S. Dist. LEXIS 22934, at *1-*4 (D.D.C. Jan. 31, 1985); Save Our Cumberland Mountains v. Watt, 550 F. Supp. 979, 980 (D.D.C. 1982), rev'd, 725 F.2d 1434 (D.C. Cir. 1984). Section 1260(c) provides that a permitting authority may not issue a permit if "the schedule [attached to the permit application] or other information available to the regulatory authority indicates that any surface coal mining operation owned or controlled by the applicant is currently in violation of this chapter ... [unless] ... the applicant submits proof that such violation has been corrected or is in the process of being corrected." 30 U.S.C. 1260(c).
 
 
 3
 In compliance with the consent decree, the Interior Department's Office of Surface Mining created the Applicant/Violator System ("AVS"). The AVS is a computerized database "programmed to identify 'links' between known violators and applicants, individuals, and corporations." Sam P. Burchett, The Applicant Violator System in Transition, 21 N. Ky. L. Rev. 555 n.5 (1994). The Office of Surface Mining operates the database and makes it available to the public on dedicated terminals and the Internet. See Office of Surface Mining, Access, at http://www.avs.osmre.gov/pubaccess.htm (last visited Dec. 5, 2000).
 
 
 4
 The National Mining Association (NMA) brought this action to set aside aspects of the AVS and related regulations. NMA objected to the AVS rules both because of the information required of applicants and because of what is purportedly done with the information. The district court granted summary judgment in favor of the Interior Department, sustaining all of the regulations.
 
 
 5
 The case was argued before us in November 2000. In December 2000, the Interior Department published a rule, effective January 18, 2001, replacing the AVS rule at issue in this appeal. See Application and Permit Information Requirements; Permit Eligibility; Definitions of Ownership and Control; the Applicant/Violator System; Alternative Enforcement, 65 Fed. Reg. 79,582 (Dec. 19, 2000) (to be codified at 30 C.F.R.) [hereinafter AVS Rules]. We ordered supplemental briefing on the question of mootness.
 
 I.
 
 6
 To determine whether anything remains of NMA's case, we need to identify which regulations NMA challenged and whether the new rules altered those regulations. This is no small task. NMA, in its complaint, did not see fit to provide citations to all of the regulations it thought invalid. Even in its briefs in this court, NMA is content to refer generally to "the rules" without, in many instances, providing any citations to the C.F.R. Perhaps this results from NMA's habit of describing what "the rules" prohibit when in fact NMA's real complaint is that "the rules" do not affirmatively require what NMA desires.
 
 
 7
 At any rate, by our count NMA specifically argued against the following old AVS rules issued by the Office of Surface Mining: 30 C.F.R. 773.5, 773.20(c), 773.23(b), 773.24, 773.25 & 778.14(c) (1999). In its supplemental brief, NMA agrees with the government that the new AVS rules moot its challenges to 773.20(c), 773.23(b), 773.24 & 773.25. See Supplemental Brief of Appellant at 4, 11. NMA also agrees that its contention about the lack of any provision to allow provisional permits is moot because the new rules fill the gap. See AVS Rules, 65 Fed. Reg. at 79,664-65 (to be codified at 30 C.F.R. 773.14).
 
 
 8
 As to NMA's remaining challenges to the regulations, some are also moot and the rest are meritless.
 
 A.
 
 9
 NMA mounted a scattershot due process attack on the old AVS rules. Its main objections were that the rules did not give notice, and did not give applicants the chance to contest links to them on the AVS before these were posted and used to deny applications. NMA brought the case as a facial challenge to the rules. Yet NMA conceded at oral argument that even by its lights, "the rules" could be constitutionally applied in some cases. Whether that concession should have ended this aspect of the case under the doctrine that a law valid in some of its applications cannot be struck down as invalid on its face is a question we leave to another day. Compare United States v. Salerno, 481 U.S. 739, 745 (1987); Reno v. Flores, 507 U.S. 292, 301 (1993); INS v. National Ctr. for Immigrants' Rights, 502 U.S. 183, 188 (1991); Chemical Waste Mgmt. v. EPA, 56 F.3d 1434, 1437 (D.C. Cir. 1995); with National Mining Ass'n v. Army Corps of Engineers, 145 F.3d 1399, 1407-08 (D.C. Cir. 1998). We also leave to another day the question whether the sort of generalized due process attack NMA advanced would be ripe under the doctrine of Abbott Laboratories v. Gardner, 387 U.S. 136, 149 (1967). See Appalachian Power Co. v. EPA, 208 F.3d 1015, 1023 n.18 (D.C. Cir. 2000). We leave these questions undecided because NMA's due process claims are moot in light of the new AVS rules.
 
 
 10
 In order to evaluate a procedural due process claim, a court must evaluate the "risk of an erroneous deprivation of [a property] interest through the procedures used, and the probable value, if any, of additional or substitute procedural safeguards." Mathews v. Eldridge, 424 U.S. 319, 335 (1976). Although the new AVS rules, like the old rules, contain no explicit provision allowing an owner to challenge a violation's status before it has been entered into the AVS, see AVS Rules, 65 Fed. Reg. at 79,666 (to be codified at 30 C.F.R. 773.25(a)), the new rules add other procedural protections. Responding to due process concerns, the Office of Surface Mining's new 30 C.F.R. 773.14, provides that an entity challenging AVS listings may be entitled to a provisional permit. See AVS Rules, 65 Fed. Reg. at 79,664. This affects the Mathews v. Eldridge calculus. The old set of rules, which are the subject of this lawsuit, cannot be evaluated as if nothing has changed. A new system is now in place. We therefore must vacate this aspect of the district court's decision as moot. See Fusari v. Steinberg, 419 U.S. 379, 386, 388-89 (1975); see also Kremens v. Bartley, 431 U.S. 119, 128 (1977) (suggesting that mootness determination can be colored by interest in avoiding premature constitutional adjudication).
 
 B.
 
 11
 NMA argued that the definition of "owned and controlled" in 773.5 of the old regulations was unconstitutionally vague and that the Office of Surface Mining should have adopted substantive rebuttal standards to overcome the presumptions set forth in the definition. See Brief of Appellant at 39-40. The new rules eliminate the presumptions and, in place of the former definition of "owned or controlled," substitute two new definitions of "own, owner, or ownership" and "control or controller." See AVS Rules, 65 Fed. Reg. at 79,662 (to be codified at 30 C.F.R. 701.5). The new rules also list the types of information one may use to rebut an ownership or control linkage in the AVS. See AVS Rules, 65 Fed. Reg. at 79,666 (to be codified at 30 C.F.R. 773.25(c)). In light of these substantial changes, NMA's vagueness challenge is moot. Any opinion regarding the former rules would be merely advisory.
 
 C.
 
 12
 Section 778.14(c) of the old rules required applicants to submit "[a] list of all violation notices received by the applicant during the three-year period preceding the application date, and a list of all outstanding violation notices received prior to the date of the application by any surface coal mining operation that is deemed to be owned or controlled by the applicant." 30 C.F.R. 778.14(c) (1999). Because the new version of 778.14(c) is to the same effect, see AVS Rules, 65 Fed. Reg. at 79,669 (to be codified at 30 C.F.R. 773.14(c)), NMA's claim that the rule exceeds the Interior Department's statutory authority is not moot.
 
 
 13
 Under the Act, applicants must list all "notices of violations ... incurred by the applicant in connection with any surface coal mining operation during the three-year period prior to the date of application." 30 U.S.C. 1260(c). The rule, NMA points out, seeks information beyond the three-year cutoff--namely, "a list of all outstanding violation notices received prior to the date of the application by any surface coal mining operation that is deemed to be owned or controlled by the applicant" regardless of the date. This is true, but not determinative. NMA fails to appreciate the distinction between violations incurred by the applicant and violations incurred by entities owned or controlled by the applicant. The three-year cutoff in 1260(c) of the Act applies only to violations by the applicant itself; it does not place any time limit on the other information 778.14(c) of the regulations requires. We have held that "the Act's explicit listings of information required of permit applicants are not exhaustive, and do not preclude the Secretary from requiring the states to secure additional information needed to ensure compliance with the Act." In re Permanent Surface Mining Regulation Litig., 653 F.2d 514, 527 (D.C. Cir. 1981); see National Mining Ass'n v. Department of the Interior, 177 F.3d 1, 9 (D.C. Cir. 1999). There is not the slightest doubt that the information sought through the regulation will help ensure compliance with the Act. Under 1260(c), a permit may not be granted to an applicant if such related entities are in violation of the Act at the time of the application and have not taken steps to rectify the situation. We therefore reject NMA's attack on 778.14(c).
 
 D.
 
 14
 This brings us to NMA's claim that the old rules violate "state primacy." By "state primacy," NMA refers to the Act's giving power to state agencies to issue permits pursuant to federally-approved state programs. See 30 U.S.C. 1260(a). The Department of the Interior is empowered to approve or disapprove state programs, see 30 U.S.C. 1253(b), and to establish regulatory requirements for these programs, see 30 U.S.C. 1251(b). But once the Secretary approves a program, permits are to be issued and revoked by the designated "regulatory authority," rather than the Interior Department. See also Bragg v. West Virginia Coal Ass'n, 248 F.3d 275, 288-89 (4th Cir. 2001) (describing the "cooperative federalism" envisioned by the statute).
 
 
 15
 According to NMA, the old rules "effectively strip[ped] the state of its exclusive permitting authority under 510 [of the Act], prohibiting the state from issuing a permit if the applicant [was] shown in the AVS as linked to: unabated violations issued by other states; or violations issued by OSM." See Brief of Appellant at 51. The offending rules were 773.23(b) and 773.24-.25, which NMA described as prohibiting a "state from allowing the applicant to demonstrate that : (1) it is not linked by ownership/control to the alleged violator(s); (2) that the violations have been abated; or (3) that the violations are invalid." Id. In its supplemental brief NMA admits that the rule (30 C.F.R. 773.25(b)(3)(i)) giving the Office of Surface Mining "plenary authority" over information on the AVS has been removed. We think the rest of NMA's state primacy challenge is also moot.
 
 
 16
 NMA also contended that state primacy was undercut by 30 C.F.R. 773.23(b)(2) (1999), which, it claimed, barred states from issuing permits when the AVS showed links to unabated violations issued by other states or by OSM. It is by no means clear that the new regulations continue this practice. Under the new 773.11(a), a regulatory authority is required to review information from the AVS as well as "any other available information" to establish an applicant's compliance history. AVS Rules, 65 Fed. Reg. at 79,664 (to be codified at 30 C.F.R. 773.11). Section 773.12 directs the regulatory authority to make its decision based on the information gathered under 773.11. See id. (to be codified at 30 C.F.R. 773.12). There is no readily apparent provision indicating that information from the AVS is to be given controlling weight. Likewise, there is nothing in the new 773.23 that indicates that AVS information should control a regulatory authority's decision to rescind a permit as improvidently issued. See AVS Rules, 65 Fed. Reg. at 79,665 (to be codified at 30 C.F.R. 773.23). Since nothing indicates that the new regulations require AVS information to control state decisions, the remainder of NMA's state primacy challenge is moot.
 
 E.
 
 17
 Because rules of the Interior Department's Office of Hearing and Appeals (OHA) were not changed by the new rulemaking, NMA's original challenge to those rules--43 C.F.R. 4.1374 and 4.1384--presents a live controversy. Both rules place the "burden of persuasion" on those challenging the validity of a decision to rescind a permit as improvidently granted ( 4.1374(b)), and to those challenging decisions of the Office of Surface Mining regarding an ownership or control link in the AVS or the status of a violation reported there ( 4.1384(b)).
 
 
 18
 When it originally promulgated these regulations, the Office of Surface Mining thought that such an allocation of the burden of proof was permitted by 7(c) of the Administrative Procedure Act. See Use of the Applicant/Violator System in Surface Coal Mining and Reclamation Permit Approval; Standards and Procedures for Ownership and Control Determinations, 59 Fed. Reg. 54,306, 54,360 (Oct. 28, 1994) [hereinafter Use of the AVS] (citing APA 7(c), 5 U.S.C. 556(d)). Relying on our decision in Environmental Defense Fund, Inc. v. EPA, 548 F.2d 998 (D.C. Cir. 1976), it concluded that "OSM properly bears only the burden of going forward with proof, not the ultimate burden of persuasion." Use of the AVS, 59 Fed. Reg. at 54,360.
 
 
 19
 Section 7(c) says that "[e]xcept as otherwise provided by statute, the proponent of a rule or order has the burden of proof." 5 U.S.C. 556(d). In Environmental Defense Fund, we interpreted "burden of proof" to mean only the burden of production or "going forward." See Environmental Def. Fund, 548 F.2d at 1004 & n.14. The Supreme Court, in dicta, later agreed with us. See NLRB v. Transportation Mgmt. Corp., 462 U.S. 393, 404 n.7 (1983). However, shortly before the Department of the Interior approved the rules in this case, the Supreme Court changed its position. In Greenwich Collieries, it concluded that the "burden of proof" in 7(c) meant "the burden of persuasion." Director, Office of Workers' Comp. Programs v. Greenwich Collieries, 512 U.S. 267, 276 (1994).
 
 
 20
 NMA argues that the regulations cannot be valid because they shift the burden of proof, in violation of the Administrative Procedure Act. But this argument only succeeds if one ignores the other language in 7(c). The statute says that the proponent of an order bears the burden of proof "[e]xcept as otherwise provided by statute." 5 U.S.C. 776(d) (emphasis added). We have already concluded that the power to suspend permits that were improvidently granted derives from OSM's power to "order the suspension, revocation, or withholding of any permit for failure to comply with any of the provisions of this chapter or any rules and regulations adopted pursuant thereto." 30 U.S.C. 1211(c)(1); National Mining Ass'n v. United States Dep't of the Interior, 177 F.3d 1, 9 (D.C. Cir. 1999). We have also concluded that the obligation to comply with the provisions of this chapter means the obligation to comply with the requirements of 30 U.S.C. 1260(c). That section provides that when the regulatory authority is aware of an "operation owned or controlled by the applicant [that] is currently in violation" of state or federal rules, "the permit shall not be issued until the applicant submits proof that such violation has been corrected or is in the process of being corrected." 30 U.S.C. 1260(c) (emphasis added). In short, Congress has allocated the burden of proving compliance with the Act. Cf. Steadman v. SEC, 450 U.S. 91, 96-97 (1981) (applying standards of proof from 7(c) because Congress had not otherwise provided). If, at any point, a permit-holder is unable to submit proof that its permit is not linked to a violator, it is no longer in compliance with 1260(c) and the Secretary may rescind the permit. It follows that when challenging OSM's decision to rescind a permit as improvidently granted, the permit holder properly bears the burden of persuasion.
 
 
 21
 43 C.F.R. 4.1374 covers only decisions to rescind improvidently granted permits. But the same allocation of burdens of proof is made in 43 C.F.R. 4.1384 (1999), which governs review of OSM's decisions regarding the existence and status of ownership and control links in the AVS. NMA contends that OSM should bear the burden of proving that a linkage should be entered into the AVS at all. To NMA, the OSM is the "proponent" of an administrative order to enter information into the AVS, and 4.1384 is invalid even if 4.1374 is valid. But this view distorts the statute: 30 U.S.C. 1260(c) places the burden of proof on the applicant, and no one else. The regulatory authority deciding whether to issue a permit uses the AVS as a source of information about potential violations. If NMA's view were correct, then the question whether the permit should be issued would shift from a proceeding before a state regulatory agency where the applicant bears the burden of proof to a federal proceeding over the accuracy of the AVS information where OSM bears the burden of proof. That result is inconsistent with the statute.
 
 
 22
 It is true that the Interior Department did not explicitly rely on the foregoing rationale in its preamble to the OHA rules. Ordinarily, when an agency reaches the proper conclusion for the wrong reasons, the courts remand the rule to the agency for further consideration. See SEC v. Chenery Corp., 318 U.S. 80, 95 (1943). However, we do not do so here. When the language of the statute commands a particular outcome--as 30 U.S.C. 1211 and 1260 do here--the fact that the agency states an incorrect legal rationale is insufficient to require a remand. See Motion Picture Ass'n of Am. v. Oman, 969 F.2d 1154, 1158 (D.C. Cir. 1992). In this case, a remand would be pointless. As Judge Friendly stated, "Chenery does not mean that any assignment of a wrong reason calls for reversal and remand; this is necessary only when the reviewing court concludes there is a significant chance that but for the error the agency might have reached a different result." Henry J. Friendly, Chenery Revisited: Reflections on Reversal and Remand of Administrative Orders, 1969 Duke L.J. 199, 211.
 
 II.
 
 23
 We therefore vacate the district court's judgment with regard to the following challenges: (1) the due process challenge to "the rules" as a whole; (2) the challenge to the rules' lack of provisional permits; (3) the challenge to 30 C.F.R. 773.5 (1999) as vague as well as the lack of rebuttal standards; (4) the claim that the rules--specifically, 30 C.F.R. 773.23, 773.24 & 773.25 (1999)--violated the Act's "state primacy" requirement. With regard to each of these challenges, we order that the district court dismiss them as moot. We affirm the district court's ruling that 30 C.F.R. 778.14 (1999) does not impermissibly require extra information, and that the Office of Hearing and Appeals rules, 43 C.F.R. 4.1374, 4.1384 (1999), do not improperly shift the burden of proof.
 
 
 24
 So ordered.