# United States Court of Appeals
## FOR THE DISTRICT OF COLUMBIA CIRCUIT

Argued September 16, 2020      Decided November 10, 2020

No. 19-5178

STATEWIDE BONDING, INC., ET AL.,
APPELLANTS

v.

UNITED STATES DEPARTMENT OF HOMELAND SECURITY, DHS,
ET AL.,
APPELLEES

Consolidated with 19-5342, 19-5364

Appeals from the United States District Court
for the District of Columbia
(No. 1:18-cv-02519)
(No. 1:18-cv-02115)
(No. 1:19-cv-02083)

*Dallas S. LePierre,* pro hac vice, argued the cause for appellants. On the briefs was *Mario Williams*. *John M. Shoreman* entered an appearance.

*Matthew J. Glover*, Counsel to the Assistant Attorney General, U.S. Department of Justice, argued the cause for appellees. With him on the brief were *Abby C. Wright*,

Attorney, and *Beth E. Cook*, Associate Legal Advisor, U.S. Department of Homeland Security. *Alan Burch* and *Rhonda L. Campbell*, Assistant U.S. Attorneys, entered appearances.

Before: HENDERSON and WALKER, *Circuit Judges*, and GINSBURG, *Senior Circuit Judge*.

Opinion for the Court filed by *Circuit Judge* HENDERSON.

KAREN LECRAFT HENDERSON, *Circuit Judge*: In late 2018, the plaintiffs—two bail-bond companies, a corporation guaranteeing immigration applicants' compliance with immigration bonds and that corporation's CEO (collectively, Statewide)—filed three separate lawsuits against the United States Department of Homeland Security (DHS) and other government entities.[1] They assert that certain aspects of DHS's current administration of the immigration-bond system violate the Administrative Procedure Act (APA) and Statewide's right to due process under the United States Constitution. *See Statewide Bonding, Inc. v. DHS*, No. 18-cv-2519, 2019 WL 2076762 (D.D.C. May 10, 2019) (*Statewide I*) (challenge to DHS's collection activities on bonds as to which Statewide has filed untimely appeals); *Statewide Bonding, Inc. v. DHS*, 422 F. Supp. 3d 42 (D.D.C. 2019) (*Statewide II*) (challenge to DHS's alleged policy or practice of determining bond breach following issuance of purportedly defective Notices To Appear (NTAs) and Notices to Produce Alien (NPAs)); *Statewide Bonding, Inc. v. DHS*, 422 F. Supp. 3d 35 (D.D.C. 2019)

---

[1] The defendants in this consolidated appeal are: DHS; United States Immigration and Customs Enforcement (ICE); the United States of America; U.S. Citizen and Immigration Services (USCIS); Acting Secretary of DHS, Chad F. Wolf; Attorney General William P. Barr; Acting Director of ICE, Matthew T. Albence; Associate Legal Advisor, Office of the Principal Legal Advisor of ICE, Jody M. Prescott; and former DHS Secretary, Kirstjen M. Nielsen.

(*Statewide III*) (challenge to DHS's rejection of bond breach determination appeals as untimely when mailed before, but received after, appeal deadline). In three separate decisions, the district court dismissed all of Statewide's claims primarily because DHS has afforded Statewide constitutionally sufficient process and because the challenged DHS actions are consistent with the applicable regulations. We affirm all three district court dismissals in this consolidated appeal.

## I.  BACKGROUND

### A.  Statutes and Regulations

ICE, a DHS component, is responsible for overseeing immigration detention and for carrying out removal orders. *See* 8 U.S.C. §§ 1226, 1357. ICE may release certain immigrant applicants from detention while removal proceedings are ongoing. 8 C.F.R. § 236.1(c). In exercising this authority, ICE may require the posting of an immigration bond as a condition of release. *See* 8 U.S.C. § 1226(a)(2)(A); 8 C.F.R. § 236.1(c)(10). The dispute here focuses on DHS's administration of the immigration bond system.

Immigration bonds may be secured by a cash deposit. If an immigrant "cannot post the entire amount [of an immigration bond] on [his] own," he may "rely on a constellation of for-profit entities to obtain release." *Statewide Bonding, Inc. v. DHS*, No. 18-cv-2115, 2019 WL 2477407, at *1 (D.D.C. June 13, 2019). Bail-bond companies, like plaintiffs Statewide Bonding, Inc. and Big Marco Insurance and Bonding Services, LLC, partner with sureties (insurance companies certified by the United States Department of the Treasury) to enter into bond agreements with ICE. *Statewide II*, 422 F. Supp. 3d at 44; *see also* 8 C.F.R. § 103.6 (governing surety bonds). To enter into a bond agreement, a bail-bond company generally requires that the bond applicant provide collateral as security in the

event he fails to appear. *Statewide II*, 422 F. Supp. 3d at 44. If the applicant does not have sufficient collateral on hand, he can contract with a third company, like plaintiff Nexus Services, Inc., to provide the necessary collateral. *Id.* at 44–45. Nexus then contracts with the bail-bond company to provide collateral and guarantee the applicant's appearance when required by ICE; in exchange, the applicant makes monthly payments to Nexus and agrees to GPS monitoring. *Id.* at 45.

Pursuant to DHS regulations, ICE may declare an immigration bond breached if there has been a "substantial violation of the stipulated conditions" of the bond. 8 C.F.R. § 103.6(e). When ICE declares a bond breached, it notifies the bond obligor(s) of the breach and the reasons therefor on a Form I-323 (Notice – Immigration Bond Breached). The obligor(s) may appeal the bond breach determination to the USCIS Administrative Appeals Office (AAO) within 33 days of service of the breach determination. *Id.* at §§ 103.3(a)(2)(i), 103.8(b). The 33-day appeal period starts when ICE places the bond breach notice in the mail. *Id.* at § 103.8(b); *see also* USCIS, AAO Practice Manual, § 3.7(c)(1) (rev. Mar. 11, 2019), https://www.uscis.gov/sites/default/files/document/aao-decisions/AAO_DHS_Precedent_Decision_Process_Print_Version.pdf [hereinafter AAO Practice Manual].

If an appeal is not timely filed, ICE's breach determination is final. *See* J.A. 152 (DHS Immigration Bond) ("A declaration of breach shall be administratively final if not timely appealed."); J.A. 179–80 (ICE Form I-323, Notice – Immigration Bond Breached) ("If no appeal is timely filed, the bond breach becomes an administratively final decision. After a final breach decision, . . . ICE will issue an invoice for the face amount of a surety bond."). A final determination that a

bond has been breached creates a claim in favor of the United States against the obligor(s) on the bond. 8 C.F.R. § 103.6(e).

An obligor that misses the appeal deadline may nevertheless be entitled to more limited review. Although DHS regulations require the rejection of "[a]n appeal which is not filed within the time allowed," 8 C.F.R. § 103.3(a)(2)(v)(B)(1), they allow a late-filed appeal to be treated as a motion to reopen or reconsider if the filing meets the requirements for either motion, *id.* at § 103.3(a)(2)(v)(B)(2). In such a case, "the appeal must be treated as a motion, and a decision must be made on the merits of the case." *Id.* Unlike with a timely appeal, however, "the filing of a motion to reopen or reconsider . . . does not stay the execution of any decision in a case." *Id.* at § 103.5(a)(1)(iv); *see infra* Part II.A.

## B.   Facts and Procedure

Statewide filed three lawsuits against DHS, asserting that different aspects of DHS's administration of the immigration-bond system violate the APA and Statewide's right to due process under the United States Constitution. The district court dismissed *Statewide I* for failure to state a claim and lack of jurisdiction, *Statewide II* on DHS's motion for judgment on the pleadings and *Statewide III* for failure to state a claim.

In *Statewide I*, the plaintiffs sued DHS to prevent its collection on breached immigration bonds before the resolution of Statewide's pending untimely appeals. As to Statewide's APA claims, the district court concluded that ICE was not obligated to halt collection on breached bonds while Statewide's untimely appeals were pending because the collection activities were consistent with the agency's regulations. *Statewide I*, 2019 WL 2076762, at *2–3. Specifically, the district court found that, "even if Plaintiffs' untimely appeals were deemed motions to reconsider, '[t]he

filing of a motion to reopen or reconsider . . . does not stay the execution of any decision in a case.'" *Id.* at \*3 (alterations in original) (quoting 8 C.F.R. § 103.5(a)(1)(iv)). And because a final bond breach determination had been made as to the bonds at issue, DHS was permitted to continue collecting on those bonds. *Id.*

The district court also dismissed Statewide's due process claim, concluding that Statewide had been afforded adequate process under *Mathews v. Eldridge*, 424 U.S. 319 (1976). *Id.* Specifically, Statewide was "afforded an adequate 'opportunity to be heard at a meaningful time and in a meaningful manner'" because it "had an opportunity to file a timely appeal that would have stayed collection"; it simply did not do so. *Id.* (quoting *Mathews*, 424 U.S. at 333). And the district court dismissed Statewide's mandamus claim for lack of jurisdiction because DHS has no duty to halt the collection of breached bonds that Statewide untimely appealed. *Id.* at \*4. Accordingly, the district court dismissed all of Statewide's claims in *Statewide I*.

In *Statewide II*, the plaintiffs sued DHS to prevent collection on breached immigration bonds because DHS provided allegedly defective NTAs and NPAs before issuing bond breach determinations. *Statewide II*, 422 F. Supp. 3d at 44–45. As to the due process claim, the district court concluded that Statewide had not established a "risk of an erroneous deprivation" of property under the *Mathews* test because of the "smorgasbord of procedural safeguards" afforded Statewide. *Id.* at 49 (citation omitted). Specifically, the district court found that DHS provides multiple means of contesting a final bond breach determination and that Statewide failed to suggest any "plausible alternative procedural safeguards." *Id.* The district court further concluded that Statewide's APA claims simply echoed the rejected due process arguments. *Id.* at 50.

Accordingly, the district court granted DHS's motion for judgment on the pleadings in *Statewide II*.

In *Statewide III*, the plaintiffs sued DHS for rejecting appeals of bond breach determinations that Statewide alleges were timely filed. *Statewide III*, 422 F. Supp. 3d at 37–38. The parties dispute whether an appeal should be deemed submitted on the date it is mailed or on the date DHS receives it. *Id.* The district court concluded that DHS's reading of the regulations is "undoubtedly the correct one" because "[i]n the most unambiguous terms, § 103.2(a)(7)(i) states that a 'benefit request'—which includes an appeal—is deemed received 'as of the actual date of *receipt* at the location designated for filing.'" *Id.* at 40 (citation omitted). The district court further found that the AAO's publicly available Practice Manual and the AAO's past rulings are consistent with the unambiguous terms of the regulations. *Id.* Moreover, to the extent Statewide alleged a due process claim in *Statewide III*, the district court dismissed the claim for the same reasons detailed in *Statewide II*, 422 F. Supp. 3d at 47–50. Accordingly, the district court dismissed all of Statewide's claims in *Statewide III*.

## II. ANALYSIS

We review *de novo* the merits of a motion to dismiss for failure to state a claim upon which relief can be granted and assume the truth of the plaintiff's well-pleaded factual allegations in the complaint. *See Rudder v. Williams*, 666 F.3d 790, 794 (D.C. Cir. 2012). We also review *de novo* a district court's dismissal for lack of jurisdiction and a district court's grant of a motion for judgment on the pleadings. *See Nat'l Parks Conservation Ass'n v. Manson*, 414 F.3d 1, 4 (D.C. Cir. 2005) (lack of jurisdiction); *Jones v. Dufek*, 830 F.3d 523, 525 (D.C. Cir. 2016) (judgment on pleadings).

In dismissing Statewide's APA claims in *Statewide I* and *Statewide III*, the district court concluded that the challenged DHS actions are consistent with the pertinent regulations. We agree and affirm the district court's decisions on that basis. In dismissing Statewide's due process claims in *Statewide I*, *Statewide II* and *Statewide III*, the district court found that the multiple means DHS provides to contest final bond breach determinations afford Statewide constitutionally sufficient process. Again, we agree and affirm the district court.

**A.** *Statewide I***: Statewide's Pending Untimely Appeals**

In *Statewide I*, the plaintiffs allege that DHS's collection on breached immigration bonds before the resolution of their pending untimely appeals contravenes DHS regulations. The district court disagreed. *Statewide I*, 2019 WL 2076762, at *2–3.

To state a claim under the APA, a plaintiff must challenge a "final agency action for which there is no other adequate remedy in a court." 5 U.S.C. § 704. "While the requirement of finality is not jurisdictional, without final agency action, 'there is no doubt that appellant would lack a cause of action under the APA.'" *Soundboard Ass'n v. Fed. Trade Comm'n*, 888 F.3d 1261, 1267 (D.C. Cir. 2018), *cert. denied*, 139 S. Ct. 1544 (2019) (quoting *Reliable Automatic Sprinkler Co. v. Consumer Prod. Safety Comm'n*, 324 F.3d 726, 731 (D.C. Cir. 2003)). Under DHS regulations, a notice of bond breach must be appealed to the AAO within 33 calendar days of the date the notice was mailed. *See* 8 C.F.R. §§ 103.8(b), 103.3(a)(2)(i). Thus, final agency action occurs 34 days after DHS mails the notice of bond breach where, as here, the bond breach determination is not timely appealed. A notice of bond breach that has not been timely appealed is final because it "mark[s] the consummation of the agency's decisionmaking process"

and is an action "by which rights or obligations have been determined." *Bennett v. Spear*, 520 U.S. 154, 178 (1997) (internal citations and quotation marks omitted).[2]

The question, then, is whether DHS regulations permit DHS to collect on breached bonds while an untimely appeal is pending. We conclude they do.

Under the APA, we may set aside agency action that is "arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law." 5 U.S.C. § 706(2)(A); *see Nat'l Envtl. Dev. Assoc.'s Clean Air Project v. E.P.A.*, 752 F.3d 999, 1009 (D.C. Cir. 2014) ("[A]n agency action may be set aside as arbitrary and capricious if the agency fails to comply with its own regulations.") (internal quotation marks omitted).

The two regulations at issue in *Statewide I* are 8 C.F.R. § 103.3(a)(2)(v)(B)(2) and 8 C.F.R. § 103.5(a)(1)(iv). Section 103.3(a)(2)(v)(B)(2) provides:

> Untimely appeal treated as motion. If an untimely appeal meets the requirements of a motion to reopen as described in § 103.5(a)(2) of this part or a motion to reconsider as described in § 103.5(a)(3) of this part, the appeal must be treated as a motion, and a decision must be made on the merits of the case.

---

[2] Statewide relies on *Cunningham v. Hamilton Cty., Ohio*, 527 U.S. 198 (1999), for the proposition that an untimely appeal renders the bond breach determination non-final. But *Cunningham* involved "whether an order imposing sanctions on an attorney . . . is a final decision" appealable under 28 U.S.C. § 1291, *id.* at 200, and is therefore inapposite.

8 C.F.R. § 103.3(a)(2)(v)(B)(2). Statewide asserts that the untimely appeals at issue meet the requirements of a motion to reopen or a motion to reconsider. *Statewide I*, 2019 WL 2076762, at *3. Accordingly, Statewide claims that it is entitled to a DHS decision on the merits. If Statewide is correct, it asserts, the bond breach determinations are no longer final and, thus, DHS cannot collect on the breached bonds while the untimely appeals remain pending.

On the other hand, DHS argues that 8 C.F.R. § 103.5(a)(1)(iv) controls here. Section 103.5(a)(1)(iv) provides:

> Effect of motion or subsequent application or petition. Unless the Service directs otherwise, the filing of a motion to reopen or reconsider or of a subsequent application or petition does not stay the execution of any decision in a case or extend a previously set departure date.

8 C.F.R. § 103.5(a)(1)(iv). DHS is correct. Its regulations make abundantly clear that an administrative appeal submitted after the bond breach determination has become administratively final does not stop collection activity because "the filing of a motion to reopen or reconsider . . . does not stay the execution of any decision in a case." *Id.*

To avoid DHS's interpretation of § 103.5(a)(1)(iv), Statewide argues that there is a difference between untimely "filed" appeals and untimely "accepted" appeals. Utilizing this distinction, Statewide claims that the act of filing an untimely appeal does not halt collection of breached bonds *unless* the untimely appeal is "accepted" by the AAO.[3] Statewide's

---

[3] Notably, Statewide concedes that there is no evidence in the record that its untimely appeals have been "accepted." Nor does

argument plainly fails. There is no separate category of "accepted" untimely appeals in the regulations. An untimely appeal is filed until disposed of—whether rejected as untimely or decided on the merits as a motion to reopen or reconsider.

The regulations unambiguously state that "the filing of a motion to reopen or reconsider . . . does not stay the execution of any decision in a case." 8 C.F.R. § 103.5(a)(1)(iv). Here, the bond breach determinations became final because the determinations were not appealed within the 33-day timeframe provided. Although § 103.3(a)(2)(v)(B)(2) entitles Statewide to a decision "on the merits of the case" *if* the untimely appeals meet the requirements of a motion to reopen or reconsider, DHS's collection on the breached bond does nothing to prevent Statewide from obtaining such decision. Moreover, if Statewide prevails on the merits, ICE will refund any payments it has collected. *Statewide I*, 2019 WL 2076762, at *3. Accordingly, DHS's collection activities on breached bonds with pending untimely appeals is entirely consistent with DHS regulations.

In *Statewide I*, the plaintiffs also argue that they are entitled to a writ of mandamus because the regulations require DHS to cease collections on the bond breach determinations at issue in this case. To establish mandamus jurisdiction under 28 U.S.C. § 1361, a plaintiff must demonstrate that (1) it has "a clear right to relief," (2) the agency has "a clear duty to act," and (3) it has "no other adequate remedy available." *Power v. Barnhart*, 292 F.3d 781, 784 (D.C. Cir. 2002) (citations omitted). As the district court correctly concluded, mandamus jurisdiction of Statewide's claim is lacking because DHS has no duty to take the action Statewide requests—namely, to

Statewide's complaint allege that the untimely appeals have been "accepted."

refrain from collecting on the bond breaches Statewide untimely appealed. *Statewide I*, 2019 WL 2076762, at \*4.

**B.   *Statewide III*: Appeal Filing Date**

In *Statewide III*, the central dispute is whether Statewide's appeals should be deemed filed on the date the appeals are mailed or on the date that AAO receives them. *Statewide III*, 422 F. Supp. 3d at 37–38. Statewide argues that an administrative appeal is filed on the date the appeal is mailed,[4] relying on its interpretation of 8 C.F.R. § 103.8(b) and the I-290B Form Instructions. DHS argues that an administrative appeal is filed on the date the appeal is received, relying on 8 C.F.R. § 103.2(a)(7)(i). The district court agreed with DHS's reading and dismissed Statewide's claims. *Id.* at 40. We affirm.

Where, as here, an agency's regulation is unambiguous, the court must give effect to the regulation's plain meaning. *See Kisor v. Wilkie*, 139 S. Ct. 2400, 2415 (2019). Under 8 C.F.R. § 103.2(a)(7)(i):

> USCIS will consider a benefit request received and will record the receipt date *as of the actual date of receipt at the location designated for filing* such benefit request whether electronically or in paper format.

8 C.F.R. § 103.2(a)(7)(i) (emphasis added). The term "benefit request" is defined as "any application, petition, motion, *appeal*, or other request relating to an immigration or naturalization benefit." *Id.* at § 1.2 (emphasis added). Statewide's appeals plainly fall within the definition of "benefit

---

[4]   The appeals at issue were mailed before the 33-day appeal deadline but DHS did not receive them until after the 33-day appeal deadline.

request" and so are governed by § 103.2(a)(7)(i). Thus, the appeals are filed when received for determining timeliness. *Statewide III*, 422 F. Supp. 3d at 40.

Moreover, DHS has consistently interpreted the unambiguous regulations as directing that the filing date for an appeal is the date the appeal is received.[5] *See* AAO Practice Manual § 3.7(c)(2) ("The filing date for an appeal is the day the USCIS location designated for filing the appeal receives it, not the date the appellant mailed the appeal."); *Matter of L-I-S-C*, 2015 WL 7687020, at *2 (AAO Nov. 4, 2015) ("The date of filing is not the date of mailing, but the actual date of receipt at the designated filing location.") (citing 8 C.F.R.

---

[5] Statewide attempts to argue that DHS has inconsistently applied the filing deadline without explanation. Statewide's argument fails for two reasons. *First*, Statewide's complaint contains no allegation of inconsistent enforcement and therefore the claim is not properly before us. The "purpose of a motion to dismiss is to assess the validity of the *pleadings*." *Henthorn v. Dep't of Navy*, 29 F.3d 682, 688 (D.C. Cir. 1994). Statewide attempted to make the inconsistent enforcement argument for the first time in its opposition brief to defendants' motion to dismiss. And it "is axiomatic that a complaint may not be amended by the briefs in opposition to a motion to dismiss." *Coleman v. Pension Benefit Guar. Corp.*, 94 F. Supp. 2d 18, 24 n.8 (D.D.C. 2000) (quoting *Morgan Distrib. Co., Inc., v. Unidynamic Corp.*, 868 F.2d 992, 995 (8th Cir. 1989)). To hold otherwise would mean that a party could unilaterally amend a complaint at will. *See Unidynamic Corp.*, 868 F.2d at 995. Accordingly, the inconsistent enforcement claim is not properly before us.

*Second*, neither of the two exhibits attached to Statewide's opposition to defendants' motion to dismiss demonstrates inconsistent enforcement. Instead, the documents notify Statewide that its appeal was moot, not that the late filed appeal was considered a timely appeal.

§ 103.2(a)(7)(i)). Accordingly, the AAO's rejection of Statewide's untimely appeals was neither arbitrary nor capricious.

Seeking to avoid this conclusion, Statewide argues that 8 C.F.R. § 103.8(b) governs the filing of an administrative appeal and provides that "[s]ervice by mail is complete upon mailing." 8 C.F.R. § 103.8(b). But the text of § 103.8(b) makes clear that it speaks to the length of time a party has to respond to a notice from DHS, not to when an appeal is considered filed. Specifically, 8 C.F.R. § 103.8(b) provides:

> (b) Effect of service by mail. Whenever a person has the right or is required to do some act within a prescribed period after the service of a notice upon him and the notice is served by mail, 3 days shall be added to the prescribed period. Service by mail is complete upon mailing.

8 C.F.R. § 103.8(b). A basic principle of statutory and regulatory interpretation is that the statute or regulation should be read in context. *See PDK Labs. Inc. v. U.S. D.E.A.*, 362 F.3d 786, 796 (D.C. Cir. 2004). That principle, applied here, leads to the inescapable conclusion that the statement "[s]ervice by mail is complete upon mailing" in § 103.8(b) applies *only* to service of a notice *from DHS*, not to an individual's filing of an appeal. Statewide's interpretation would also require us to read "appeal" out of the definition of "benefit request," § 1.2. Accordingly, § 103.8(b) has no bearing on when an administrative appeal is considered filed; it applies only to determine when service of a DHS notice occurs.

Statewide further argues that the I-290B Form, Instructions for Notice of Appeal or Motion, incorporates

§ 103.8(b). This argument also plainly fails. The I-290B Form instructions read, in relevant part:

> Timeliness. In most cases, you must file your appeal or motion within 30 calendar days of the date of service of the adverse decision (or within 33 calendar days if we mailed the decision to you) . . . .
>
> NOTE: If we sent you the decision by mail, the "date of service" is the date we mailed the decision, not the date you received it. See 8 CFR 103.8(b). Decisions are normally mailed the same day they are issued.

Dep't of Homeland Sec., *Instructions for Notice of Appeal or Motion*, https://www.uscis.gov/sites/default/files/files/form/i-290binstr.pdf (emphasis omitted). Granted, the I-290B Form references § 103.8(b) but *only* in the context of "the date of service of the adverse decision," *not* the date of filing an appeal. *Id.* The I-290B Form's citation to § 103.8(b) is therefore entirely consistent with § 103.8(b)'s application to the service of government notices only.

### C. Statewide's Due Process Claims

In all three cases, Statewide alleges its due process rights have been violated. Because DHS provides multiple means to contest final bond breach determinations, the district court found Statewide's due process claims failed in all three cases. We agree.

In examining a procedural due process claim, courts apply a "familiar two-part inquiry: we must determine whether the plaintiffs were deprived of a protected interest, and, if so, whether they received the process they were due." *UDC Chairs*

*Chapter, Am. Ass'n of Univ. Professors v. Bd. of Trs. of Univ. of the Dist. of Columbia*, 56 F.3d 1469, 1471 (D.C. Cir. 1995) (internal quotation marks omitted). The district court concluded that even assuming *arguendo* that Statewide possessed a protected interest in the immigration bond agreements, the review procedure for a bond breach determination afforded Statewide "the process 'due' under the Fifth Amendment." *Statewide II*, 422 F. Supp. 3d at 47 (citing *Lujan v. G&G Fire Sprinklers, Inc.*, 532 U.S. 189, 196–97 (2001) (declining to address whether plaintiff alleged constitutionally protected interest because its interest was "fully protected")).

There is no one-size-fits-all procedure to protect against the unconstitutional deprivation of property. Rather, "due process is flexible and calls for such procedural protections as the particular situation demands." *Mathews*, 424 U.S. at 334. "The fundamental requirement of due process is the opportunity to be heard at a meaningful time and in a meaningful manner." *Id.* at 333 (internal quotation marks omitted). To "evaluate a procedural due process claim, a court must evaluate the 'risk of an erroneous deprivation of [a property] interest through the procedures used, and the probable value, if any, of additional or substitute procedural safeguards.'" *Nat'l Min. Ass'n v. U.S. Dep't of Interior*, 251 F.3d 1007, 1010 (D.C. Cir. 2001) (alteration in original) (quoting *Mathews*, 424 U.S. at 335).

As to the available process, an obligor has three avenues to seek review of an immigration bond breach determination. First, it has access to an administrative appeal process before collection begins. When DHS determines that a bond has been breached, there is no *automatic* forfeiture of the obligor's property, *i.e.*, the money represented by the bonds. *Statewide II*, 422 F. Supp. 3d at 47. Instead, DHS notifies the obligor of

the bond breach decision, the reasons for the decision and the obligor's right to appeal the decision in accordance with the relevant regulations. *See* 8 C.F.R. § 103.6.

The administrative appeal process guarantees the obligor an independent review, allowing the submission of briefs and evidence and the opportunity to be represented by counsel. *Statewide II*, 422 F. Supp. 3d at 48; *see also* 8 C.F.R. § 103.3 (outlining administrative appeals system); AAO Practice Manual § 3.4 (*de novo* review), § 3.6 (preponderance of evidence standard), § 2.5 (ability to hire counsel), § 3.8 (right to file supplemental brief or additional evidence). Although the AAO typically bases its decision on the record, it may grant a written request for oral argument. AAO Practice Manual §§ 3.8(f), 4.10. The AAO issues a written decision on the appeal and any party can then move to reopen or reconsider the decision. *Id.* § 3.14. If a bond breach determination is timely appealed, DHS does not collect on the bond until the AAO issues its written decision on the appeal.

The obligor can also dispute DHS's invoice for the breached bond. If a bond breach determination is not timely appealed and becomes final, DHS issues an invoice to each of the co-obligors on the bond. The invoice notifies the obligor of the amount due and informs the obligor that it has the right to "dispute the validity of the debt" via a written request within 30 days of receipt of the invoice. J.A. 164–65 (DHS Invoice); *see also* 31 C.F.R. § 901.2(b) (agency collection action must inform debtor of any right to seek agency review). If a timely written request is received, the debt is reviewed and collection on the debt ceases until a written summary of the review is provided. J.A. 165 (DHS Invoice). This pre-deprivation review may result in a finding that the debt is valid, partially invalid or invalid in its entirety. *Statewide II*, 422 F. Supp. 3d at 48. Although less formal than the administrative appeal process,

the invoice dispute resolution process affords a bond obligor another opportunity to obtain pre-deprivation agency review.

Moreover, because DHS regulations do not require exhaustion of administrative remedies, a bond obligor can skip the administrative appeal process and the invoice dispute resolution process and immediately file suit in federal court for breach of contract. *Statewide II*, 422 F. Supp. 3d at 48; *see, e.g.*, *AAA Bonding Agency Inc. v. DHS*, 447 F. App'x 603, 612 (5th Cir. 2011) (no administrative exhaustion requirement in suit involving surety company's challenge to 1,400 immigration bond-breach determinations); *United States v. Gonzales & Gonzales Bonds & Ins. Agency, Inc.*, 728 F. Supp. 2d 1077, 1080 (N.D. Cal. 2010) (suit brought by United States against bail-bond company to recover bond amounts where company counterclaimed bonds were invalid because of failure to issue timely delivery demand).

The three avenues to review a bond breach determination satisfy the requirements of the Due Process Clause. In this respect, the administrative appeal process provides the plaintiffs a meaningful opportunity to present their case before a neutral adjudicator. *See Marshall v. Jerrico, Inc.*, 446 U.S. 238, 242 (1980) ("The Due Process Clause entitles a person to an impartial and disinterested" adjudicator.). Moreover, courts have found that where, as here, a due process property interest derives from contract, the property interest "can be fully protected by an ordinary breach-of-contract suit." *LG Elecs. U.S.A., Inc. v. Dep't of Energy*, 679 F. Supp. 2d 18, 34 (D.D.C. 2010) (quoting *Lujan v. G & G Fire Sprinklers*, 532 U.S. 189, 196–97 (2001) (contractor's due process claim involving prevailing wage requirements fully protected by availability of ordinary breach-of-contract suit)).

Given the multiple avenues for seeking relief, Statewide cannot demonstrate the available process is inadequate or that it was denied the protections provided. In all three cases, Statewide had 33 days from the date DHS mailed the notice of bond breach determination to file an appeal. Statewide did not do so. Statewide's failure to appeal within the pertinent deadline does not vitiate Statewide's due process right. *Cf. Holder v. Gonzales*, 499 F.3d 825, 829–30 (8th Cir. 2007) (Board of Immigration Appeal's (BIA) dismissal of appeal filed one day late did not violate petitioner's due process right); *Malak v. Gonzales*, 419 F.3d 533, 535 (6th Cir. 2005) (no error in BIA's dismissal of appeal as untimely filed based on regulations providing notice of appeal is considered filed when BIA receives it). Accordingly, we affirm the district court's dismissals of Statewide's due process claims in *Statewide I*, *Statewide II* and *Statewide III*.[6]

Statewide's due process claims also fail for an independent reason—Statewide has not suggested what plausible alternative safeguards would be constitutionally adequate. *See Doe ex rel. Fein v. Dist. of Columbia*, 93 F.3d 861, 870 (D.C. Cir. 1996) (per curiam) ("[A] procedural due process claim requires the plaintiff to identify the process that is due"). Statewide seems to argue for an appellate process devoid of deadlines because it missed the deadline for challenging certain bond breach determinations. *See Statewide II*, 422 F. Supp. 3d at 50. As the district court appropriately concluded, however, the Due Process Clause "does not require an agency to permit never-ending opportunities to appeal." *Id.* Simply put, Statewide "failed to take advantage of all the process due [it]."

---

[6] Statewide's APA claim in *Statewide II* is derivative of its due process claim. *See Statewide II*, 422 F. Supp. 3d at 50. Accordingly, that claim cannot survive for the same reason that Statewide's due process claim fails, namely that Statewide has been afforded sufficient process.

*Yates v. Dist. of Columbia*, 324 F.3d 724, 726 (D.C. Cir. 2003) (per curiam).

Statewide's only counterargument on appeal is that it attempted to utilize the process afforded by filing untimely appeals. Specifically, Statewide asserts that it "filed multiple untimely appeals that were accepted by the AAO, thus requiring a decision on the merits, but the DHS's continued collections on the . . . bond breach determinations threaten Statewide's continued existence, depriving the appeal of any meaning." Appellants Br. 20. But Statewide had the opportunity to file a timely appeal that would have stayed collection. *See* 8 C.F.R. § 103.3(a)(2)(i). It failed to do so. Moreover, as noted, if Statewide prevails on its untimely appeals, DHS will refund any payments it has collected. *Statewide I*, 2019 WL 2076762, at *3; *see also* Defs.' Mem. Supp. Mot. to Dismiss at 11, *Statewide I*, No. 18-cv-2519 (D.D.C. May 10, 2019) ("If the AAO considered any of Plaintiffs' appeals to be properly-filed motions to reopen and issued a decision invalidating the bond breach determinations, ICE would refund any payments for overturned bond breaches."). And the post-deprivation remedy available here—*if* Statewide were to succeed on the merits of its untimely appeals—does not violate due process. *See, e.g.*, *Dewees v. United States*, 767 F. App'x 4, 7 (D.C. Cir. 2019) (per curiam), *cert. denied*, 140 S. Ct. 48 (2019) (per curiam) (post-payment right to challenge payment of tax penalty in federal court does not violate due process where plaintiff had two pre-payment administrative avenues for review).

For the foregoing reasons, the district court's judgments in *Statewide I*, *Statewide II* and *Statewide III* are affirmed.

*So ordered.*